IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE JIMENEZ MORENO and MARIA JOSE LOPEZ, on behalf of themselves and all others similarly situated, </br></br>      Plaintiffs,</br>v.</br></br>JANET NAPOLITANO, Secretary of the Department of Homeland Security (DHS); JOHN MORTON, Director of U.S. Immigration and Customs Enforcement (ICE) and Removal Operations (ERO); DAVID C. PALMATIER, Unit Chief, ICE/ERO Law Enforcement Support Center (LESC); RICARDO WONG, ICE/ERO Director, Chicago Field Office, in their official capacities,</br></br>      Defendants. | Case No. 11 C 5452</br></br>Judge John Z. Lee |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jose Jimenez Moreno and Maria Jose Lopez ("Plaintiffs"), on behalf of themselves and similarly situated individuals, have sued Janet Napolitano, the Secretary of the Department of Homeland Security ("DHS"), and other federal officials responsible for the U.S. Immigration and Custom Enforcement ("ICE") division of the DHS. Plaintiffs allege that ICE's assertion of authority to instruct federal, state, and local law enforcement agencies ("LEAs") to continue the detention of individuals in the LEA's jails so that ICE can investigate their immigration status is a violation of ICE's statutory authority under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A)–(D), and the Immigration and Naturalization Act ("INA"), 8 U.S.C. §§ 1226(a), 1357(a)(2), and 1357(d), as well as a violation of Plaintiffs' constitutional rights under the Fourth, Fifth, and Tenth Amendments. Plaintiffs seek declaratory and injunctive relief, or, in the alternative, habeas corpus relief. Before the Court is Defendants' motion to

1

dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction. For the reasons provided herein, the Court denies Defendants' motion.

## Facts

ICE is the division of DHS charged with identifying and removing unlawfully present aliens, including criminal aliens, from the United States. (Corrected Compl. ¶ 15.) As part of carrying out that task, ICE's division of Enforcement and Removal ("ERO") issues Form I-247 immigration detainers to federal, state, and local LEAs. (*Id.*) These detainers contain two main sections. (*Id.*, Ex. A.) The first section advises an LEA that DHS has taken an action concerning an individual in the LEA's custody. (*Id.*) The detainer lists four potential actions undertaken by DHS: (1) DHS has initiated an investigation to determine whether the individual is subject to removal from the United States; (2) DHS has issued a Notice to Appear or other charging document initiating removal proceedings; (3) DHS has issued a warrant of arrest in removal proceedings; and (4) DHS has ordered deportation or removal from the United States. (*Id.*) ICE indicates which actions are applicable by marking a box next to the action. (*Id.*)

The second section of the detainer requests that the LEA take certain actions. (*Id.*) DHS can request the LEA to: (1) maintain custody of an individual for a period not to exceed forty-eight hours (excluding Saturdays, Sundays, and Federal holidays) to provide adequate time for DHS to assume custody of the individual pursuant to 8 CFR § 287.7; (2) sign and return a copy of the form; (3) notify DHS of the time of release at least 30 days prior to release or as far in advance as possible; (4) notify DHS in the event of the inmate's death or transfer to another institution; and (5) cancel the detainer. (*Id.*) Like the first section, ICE indicates what is requested of the LEA by marking a box next to the appropriate action(s). (*Id.*)

On March 21, 2011, Plaintiff Jose Jimenez Moreno was arrested in Rockford, Illinois and taken into state custody. (*Id.* ¶ 13.) The next day, he was indicted by the State of Illinois for two felonies: a cocaine charge and threatening a public official. (Defs.' Mot. Dismiss 2.) That same day, the ICE Chicago Area of Responsibility ("AOR") issued a Form I-247 immigration detainer against Moreno to the Winnebago County Sheriff. (Corrected Compl. ¶ 15, Ex. A.) In the first section of the detainer, DHS advised the Sheriff that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States." (*Id.*) In the second section, DHS requested that the Sheriff: (1) maintain custody of Moreno pursuant to 8 CFR § 287.7 for a period not to exceed forty-eight hours to provide DHS time to assume custody of Moreno; (2) complete, sign, and return the form; (3) notify DHS at least 30 days prior to Moreno's release or as soon as possible; and (4) notify DHS in the event of Moreno's death or transfer to another institution. (*Id.*)

Similarly, in November 2010, Plaintiff Maria Jose Lopez pleaded guilty to the federal offense "misprision of a felony." (*Id.* ¶ 14.) On January 25, 2011, she surrendered herself to the Federal Correctional Institution ("FCI") in Tallahassee, Florida to serve a year-long sentence. (*Id.*) On February 1, 2011, ICE's Chicago AOR issued an I-247 immigration detainer against Lopez to the FCI. (*Id.*, Ex. B.) In the first section of the detainer, DHS advised the FCI that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States." (*Id.*) In the second section, DHS requested that the FCI: (1) maintain custody of Lopez pursuant to 8 CFR § 287.7 for a period not to exceed forty-eight hours to provide DHS time to assume custody of Lopez; (2) notify DHS at least 30 days prior to Lopez's release or as soon as possible; and (3) notify DHS in the event of Lopez's death or transfer to another institution. (*Id.*)

3

In August 2011, Moreno and Lopez sued DHS Secretary, Janet Napolitano; ICE Director, John Morton; the Unit Chief for ICE/ERO's Law Enforcement Support Center, David C. Palmatier; and the Field Officer Director of the ICE/ERO Chicago AOR, Ricardo Wong. (Corrected Compl. ¶¶ 15-18.) Moreno and Lopez simultaneously moved to certify a class under Rule 23. (*Id.* ¶ 25.) The proposed class includes:

> [a]ll current and future persons against whom ICE has issued an immigration detainer of the Chicago Area of [R]esponsibility (AOR) where ICE has instructed the law enforcement agency (LEA) to continue to detain the individual after the LEA's authority has expired and where ICE has indicated that the basis for the further detention is that ICE has initiated an investigation into the persons' removability, but not including any noncitizen subject to mandatory detention under 8 U.S.C. § 1226(c). (*Id.*)

In August 2011, ICE lifted the detainer against Moreno. (Pls.' Opp'n Mot. Dismiss 5-6.) On November 22, 2011, ICE lifted the detainer against Lopez and she was released from custody. (*Id.*)

On November 23, 2011, two additional individuals subject to I-247 detainers, Sergey Mayorov and Nicholas Taylor-Jones, sought leave to intervene in this action. (*Id.* at 9.) Several days later, at a hearing on the motion to intervene, Defendants announced that ICE had also lifted the detainers against the intervening plaintiffs. (*Id.*) Defendants now move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

## Discussion

Pursuant to Rule 12(b)(1), a court may dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). In addition, the Court may properly look beyond the jurisdictional allegations of the

4

complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Id.*

## I. Article III Standing

Defendants argue that Plaintiffs' Fourth and Fifth Amendment claims should be dismissed because Plaintiffs lack standing to bring them under Article III of the United States Constitution.[1] (Defs.' Mot. Dismiss 6-7.) Article III of the federal constitution limits the jurisdiction of the federal courts to hearing "cases" or "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). An essential component of Article III's case-or-controversy requirement is the doctrine of standing. *Id.* at 560; *Apex Digital, Inc., v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Whether a plaintiff has standing "in no way depends on the merits of the plaintiff's [claim]." *Warth*, 422 U.S. at 500; *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012) (courts should not "conflate[] standing with the merits of the case"). To satisfy the standing doctrine, a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) an "injury in fact" that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

Defendants argue that Plaintiffs never satisfied the standing doctrine's injury-in-fact requirement because the I-247 detainers were issued against Plaintiffs after they had already

---

[1] Defendants also argue that Plaintiffs lack standing to bring their other constitutional, statutory, and habeas claims because ICE has cancelled the detainers against them. The Court addresses this argument in Section II.

been arrested and were in criminal custody. As a result, according to Defendants, any injury or deprivation of liberty Plaintiffs may have experienced was caused not by the detainers at issue, but solely by Plaintiffs' unrelated criminal custody. (Defs.' Mot. Dismiss 6-7.)

To satisfy the injury-in-fact requirement when seeking injunctive and declaratory relief, Plaintiffs must show that they are under threat of suffering an injury that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Actual harm is not categorically required; an actual and imminent threat of future harm can satisfy the injury-in-fact requirement. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) (finding injury in fact when plaintiffs claimed an increased risk of data theft after their information had been accessed by a malicious and sophisticated hacker); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005) ("[T]he present impact of a future though uncertain harm may establish injury in fact for standing purposes."); *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 888 (7th Cir. 2001) (holding that an ERISA plan administrator's increased discretion increased the risk that the participant would be denied benefits and that "[t]he increased risk the participant faces as a result is an injury-in-fact" for standing purposes); *Vill. of Elk Grove Vill. v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993) ("[E]ven a small probability of injury is sufficient to create a case or controversy – to take a suit out of the category of the hypothetical – provided of course that the relief sought would, if granted, reduce the probability.").

The Seventh Circuit has not specifically addressed whether the threat of future confinement alone satisfies the injury-in-fact requirement for claims brought under the Fourth and Fifth Amendments. The Seventh Circuit, however, has held that, in the context of a habeas corpus petition, the petitioner "may challenge the illegality of future confinement, even if he is currently legally confined." *Wilkins-El v. Marberry*, 340 Fed. Appx. 320, 322 (7th Cir. 2009)

(citing *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 488-89 (1973) (permitting a prisoner to challenge future confinement in another state via a habeas corpus petition because the prisoner was "in custody" by virtue of a detainer lodged against him by that state). *Vargas v. Swan*, 854 F.2d 1028 (7th Cir. 1988), is particularly illustrative.

In *Vargas*, an individual incarcerated for first degree murder in the Wisconsin state penal system filed a habeas petition after the federal government issued an I-247 immigration detainer against him. *Id.* at 1029. Plaintiff alleged that he was "in custody in violation of the Constitution or laws or treaties of the United States" pursuant to 28 U.S.C. § 2241(c)(3) and sought an expedited determination from the United States Immigration and Naturalization Service ("INS") of whether he would be excluded from the United States upon his release from state prison. *Id.* at 1029-30. The INS argued that it did not have sufficient custody of Plaintiff to support the court's habeas jurisdiction. *Id.* at 1030. The Seventh Circuit held that the court had jurisdiction if the detainer had "as part of its effect the holding of a prisoner for a future custodian who has evinced an intent to retake or to decide the prisoner's status at the end of his or her current confinement." *Id.* at 1032.[2]

Although the *Wilkins-El* and *Vargas* decisions addressed habeas jurisdiction and not jurisdiction for claims arising directly under the Fourth and Fifth Amendments, the injury that Plaintiffs allege in this case, *i.e.*, the threat of future confinement, is identical to the injury

---

[2] Other circuits have disagreed with *Vargas*. *See, e.g.*, *Zolicoffer v. U.S Dep't of Justice*, 315 F.3d 538, 541 (5th Cir. 2003) ("This court agrees with the majority of the circuit courts considering the issue and holds that prisoners are not "in custody" for purposes of 28 U.S.C. § 2241 simply because the INS has lodged a detainer against them."); *Galaviz-Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir. 1994) (noting that "[a]lmost all the circuit courts considering the issue have determined that the lodging of a detainer, without more, is insufficient to render the alien in custody"); *Prieto v. Gluch*, 913 F.2d 1159, 1163 (6th Cir. 1990) ("An examination of the court's reasoning in *Vargas* reveals that the reliance of the *Vargas* court on several United States Supreme Court cases in reaching its conclusion was perhaps misplaced."); *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir. 1990) ("The filing of the detainer, standing alone, did not cause [Plaintiff] to come within the custody of the INS."); *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988) ("The filing of an INS detainer, standing alone, does not cause a sentenced offender to come within the custody of the INS for purposes of a petition for a writ of habeas corpus.")

7

alleged by the petitioners in *Wilkins-El* and *Vargas*. Accordingly, we find that, if the detainers at issue here had the effect of "holding" the Plaintiffs "for a future custodian who has evinced an intent to retake or to decide the prisoner's status at the end of his or her current confinement," *Vargas*, 854 F.2d at 1032, Plaintiffs satisfied the injury-in-fact requirement and had standing at the time that they initiated their suit. Taking the allegations in the complaint as true, Plaintiffs amply satisfied this burden.

At the inception of the litigation, Plaintiffs were subject to I-247 immigration detainers that requested that LEAs maintain custody of them after the expiration of the LEA's lawful custody pursuant to federal regulation 8 C.F.R. § 287.7. (Pls.' Opp'n Mot. Dismiss 6.) Federal regulation 8 C.F.R. § 287.7 states in pertinent part that "[u]pon a determination by [DHS] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency *shall* maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the [DHS]." 8 C.F.R. § 287.7(d) (emphasis added). Under this mandatory language, Plaintiffs faced an actual and imminent risk of injury because they faced an imminent risk of future confinement pursuant to the I-247 detainers beyond the time that they would otherwise be released. At the motion to dismiss stage when all reasonable inferences are drawn in favor of the plaintiff, *Ezekiel*, 66 F.3d at 897, it cannot be said based upon the current record that the Plaintiffs' risk of future confinement is "conjectural" or "hypothetical," or that the mandatory language of 8 C.F.R. § 287.7 is not followed in practice. Thus, at the inception of the litigation, when Plaintiffs faced I-247 detainers, Plaintiffs satisfied the standing doctrine's injury-in-fact requirement.

In addition to contesting Plaintiffs' standing at the commencement of this action, Defendants contend that Plaintiffs now lack standing because the I-247 detainers have been cancelled. (Defs.' Mot. Dismiss 5-6.) Accordingly, Defendants argue that Plaintiffs no longer

8

face imminent harm and, therefore, do not satisfy the standing doctrine's injury-in-fact requirement at this point in time. (Defs.' Mot. Dismiss 5-6.) This argument, however, is based on an intervening event – the cancellation of the I-247 detainers. When the litigation began, Moreno and Lopez were subject to active I-247 detainers. (Corrected Compl. ¶¶ 13-14.) The Seventh Circuit has recognized that "[w]hen a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness." *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010). Thus, the Court addresses whether Plaintiffs' claims are moot.

## II. Mootness

Article III of the Constitution limits the jurisdiction of federal courts to hearing live "cases" or "controversies." *Lujan*, 504 U.S. at 559; *Medlock v. Trs. of Ind. Univ.*, 683 F.3d 880, 882 (7th Cir. 2012). In keeping with that limitation, "if an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the [case] must be dismissed" as moot. *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1992)).

Defendants argue that Plaintiffs' claims are moot because ICE lifted the I-247 detainers against Moreno and Lopez, and thus no case or controversy remains. This argument might carry the day had Plaintiffs filed claims solely on an individual basis. Moreno and Lopez, however, filed for class certification simultaneously with their complaint when they were subject to I-247 detainers.[3] (Corrected Compl. ¶ 25.) Although the filing of a certification motion would not typically save a cause of action from becoming moot, the timely filing for class certification can save a cause of action if it falls within the "inherently transitory" exception to the mootness

---

[3] Although on its face the proposed class could potentially include individuals who at one time had an I-247 detainer outstanding against them but have since had the detainer withdrawn, the Court construes the proposed class to include only individuals who have an active I-247 detainer outstanding against them.

9

doctrine announced in *Gerstein v. Pugh*, 420 U.S. 103 (1975). *See Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010). Thus, the issue before the Court is whether Moreno and Lopez's claims are so "inherently transitory" that it is uncertain that any member of the class would maintain a live controversy long enough for a judge to certify a class.

To fall within the "inherently transitory" exception to the mootness doctrine, a claim must meet two elements: (1) it must be uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there must be a "constant class of persons suffering the deprivation complained of in the complaint." *Id.* at 582 (citing *Gernstein*, 420 U.S. at 110 n.11.) Plaintiffs' claims satisfy both elements.

The essence of the "inherently transitory" exception is uncertainty about the length of time a claim will remain alive. *Id.* If the length of a claim "cannot be determined at the outset" and is "subject to a number of unpredictable factors," it is "inherently transitory." *Id.* In *Olson*, a prison inmate moved for class certification but was transferred out of jail before the court's ruling. *Id.* at 583. The Seventh Circuit held that the "inherently transitory" exception applied because the inmate did not know when his claim would become moot. The duration of his claim was at the discretion of the Indiana Department of Correction, and an individual incarcerated "may be released for a number of reasons that he cannot anticipate." *Id. Cf. Banks v. NCAA*, 977 F.2d 1081, 1086 (7th Cir. 1992) ("inherently transitory" exception did not apply where plaintiff knew from the outset that his claim would become moot 120 days from the onset of the controversy).

Similarly here, the "inherently transitory" exception applies because Moreno and Lopez did not know when their claims would become moot. Like the inmate plaintiff's detention in *Olson*, the duration of the I-247 detainers could not be determined at the outset; they were subject to the discretion of ICE officials and beyond Plaintiffs' control. (Corrected Compl. ¶ 20.)

10

The I-247 detainers sought continued detention on the basis that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States." (*Id.*) Plaintiffs have no way of knowing what course an ICE investigation might take or when ICE might lift the detainers against them, if at all.[4] Thus, it is uncertain that a claim against Defendants brought by a plaintiff subject to an I-247 detainer will remain live for enough time to allow an individual who could be named as a plaintiff to certify a class. The duration of any claim is at the discretion of ICE, and the detainer against any plaintiff may be lifted for reasons that he or she cannot anticipate.

Plaintiffs' claims also satisfy the second element of the "inherently transitory" exception – that there be a "constant class of persons suffering the deprivation complained of in the complaint." *Olson*, 594 F.3d at 582. Each year ICE issues hundreds of thousands of I-247 detainers. (Corrected Compl. ¶ 28.) This makes it likely that a constant class of persons will be subject to an I-247 detainer similar to Moreno and Lopez. Because Plaintiffs' claims satisfy both elements of the "inherently transitory" exception to the mootness doctrine, Plaintiffs' claims are not moot.[5]

### Conclusion

For the reasons herein, the Court denies Defendants' motion to dismiss [10].

---

[4] Here, ICE lifted the detainers after Plaintiffs filed a complaint but before the Court could address class certification. (Pls.' Opp'n Mot. Dismiss 6.) After ICE lifted the detainers against Moreno and Lopez, two additional individuals subject to I-247 immigration detainers, Sergey Mayorov and Nicholas Taylor-Jones, sought leave to intervene in this action. (*Id.* at 9.) Days after Mayorov and Taylor-Jones moved to intervene, Defendants stated that ICE had lifted the detainers against them as well. (*Id.*) Even if we were to attribute these events to mere coincidence, they illustrate the inherently transitory nature of Plaintiffs' claims.

[5] Because the Court finds Plaintiffs' claims are not moot under the "inherently transitory" exception, the Court need not address Plaintiffs' argument that their claims are not moot under the "capable of repetition yet evading review" exception, a separate and distinct exception to the mootness doctrine. *See Olson*, 594 F.3d at 583.

**SO ORDERED**                          **ENTER: 11/30/12**

                                               _____
                                               **JOHN Z. LEE**
                                               **U.S. District Judge**