**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSE JIMENEZ MORENO and MARIA JOSE LOPEZ, on behalf of themselves and all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 11 C 5452** |
| **JANET NAPOLITANO, Secretary of the Department of Homeland Security (DHS); JOHN MORTON, Director of U.S. Immigration and Customs Enforcement (ICE) and Removal Operations (ERO); DAVID C. PALMATIER, Unit Chief, ICE/ERO Law Enforcement Support Center (LESC); RICARDO WONG, ICE/ERO Director, Chicago Field Office, in their official capacities,** | ) ) ) ) ) ) ) ) ) ) ) | **Judge John Z. Lee** |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Jimenez Moreno was in the custody of the Winnebego County Sheriff when the Immigration and Customs Enforcement Division ("ICE") of the United States Department of Homeland Security ("DHS") issued a Form I-247 immigration detainer requesting that the Sheriff maintain custody of Moreno, upon his release from state custody, for up to forty-eight hours to provide DHS time to assume custody of him. Plaintiff Maria Jose Lopez, who was serving time at a federal correctional center in Tallahassee, Florida, was also the subject of an ICE Form I-247 detainer, requesting that the correctional center maintain custody of her, upon her release, for up to forty-eight hours. Moreno and Lopez filed this lawsuit, on behalf of themselves and other similarly situated individuals, against the Secretary of DHS[1] and other

---

[1] The Secretary of DHS has changed since Plaintiffs filed suit. For the purpose of this Memorandum Opinion and Order, the Secretary of DHS will be referenced by title only.

federal officials responsible for ICE, alleging that the issuance of the detainers exceeded ICE's statutory authority under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A)–(D), and the Immigration and Naturalization Act ("INA"), 8 U.S.C. §§ 1226(a), 1357(a)(2), and 1357(d), and violated their constitutional rights under the Fourth, Fifth, and Tenth Amendments.

Before the Court is Plaintiffs' amended motion for class certification pursuant to Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2). For the reasons provided herein, the Court grants Plaintiffs' motion, but modifies the class definition proposed by Plaintiffs. The Court declines to certify Plaintiffs' proposed sub-class.

## Background

### I.     The I-247 Detainer Form

ICE is the division of DHS charged with identifying and removing unlawfully present aliens from the United States. Am. Compl. ¶ 15. As part of carrying out that task, ICE's division of Enforcement and Removal Operations ("ERO") issues Form I-247 immigration detainers to federal, state, and local law enforcement agencies ("LEAs"). *Id.* The detainers, which were revised in August 2010, December 2011, and December 2012, contain two main sections. *See* Pl.'s Mem. Supp. Class Cert., Exs. A, B, C.

The first section advises an LEA that DHS has taken an action concerning an individual in the LEA's custody. *Id.* The August 2010 version of the detainer form, which was issued to Moreno and Lopez, lists four checkboxes ("☐") corresponding to various actions undertaken by DHS: (1) commencement of an investigation to determine whether the individual is subject to removal from the United States; (2) issuance of a Notice to Appear or other charging document initiating removal proceedings; (3) issuance of a warrant of arrest in removal proceedings; and (4) issuance of an order of deportation or removal from the United States. *Id.*, Ex. A. ICE

2

indicates which of these actions are applicable by checking the box next to the corresponding action. *Id.* In December 2012, ICE revised the first checkbox to state that ICE has "[d]etermined that there is reason to believe the individual is an alien subject to removal from the United States." *Id.*, Ex. C.

The second section of the detainer form requests that the LEA take certain actions. *See id.*, Exs. A, B, C. DHS can request the LEA to: (1) maintain custody of an individual for a period not to exceed forty-eight hours (excluding Saturdays, Sundays, and Federal holidays) to provide adequate time for DHS to assume custody of the individual pursuant to 8 CFR § 287.7; (2) sign and return a copy of the form; (3) notify DHS of the time of release at least thirty days prior to release or as far in advance as possible; (4) notify DHS in the event of the inmate's death or transfer to another institution; and (5) cancel the detainer. *Id.* Like the first section, ICE indicates what action it requests the LEA to take by checking a box next to the appropriate action(s). *Id.*

In December 2011, ICE modified the detainer form to request that the LEA provide a copy of the detainer form to the detained individual. *Id.*, Exs. B, C. ICE also added a section entitled "Notice to the Detainee" and included a telephone number by which the individual could contact ICE if he or she believed the detainer to be improper. *Id.*

## II. The Named Plaintiffs

In November 2010, Plaintiff Maria Lopez pleaded guilty to the federal offense of "misprision of a felony." Am. Compl. ¶ 14. On January 25, 2011, she surrendered herself to the Federal Correctional Institution ("FCI") in Tallahassee, Florida, to serve a year-long sentence.

*Id.* On February 1, 2011, ICE's Chicago Area of Responsibility ("AOR")[2] issued an I-247 immigration detainer against Lopez to the FCI. *Id.*, Ex. A.

In the first section of the detainer, DHS advised the FCI that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States." *Id.*, Ex. A. In the second section of the detainer, DHS requested that the FCI: (1) maintain custody of Lopez pursuant to 8 CFR § 287.7 for a period not to exceed forty-eight hours to provide DHS time to assume custody of Lopez; (2) notify DHS at least thirty days prior to Lopez's release or as soon as possible; and (3) notify DHS in the event of Lopez's death or transfer to another institution. *Id.*, Ex. A.

On March 21, 2011, Plaintiff Jose Moreno was arrested in Rockford, Illinois, and taken into state custody. *Id.* ¶ 13. The next day, he was indicted by the State of Illinois for two felonies: cocaine possession and threatening a public official. Defs.' Opp'n 4. That same day, ICE's Chicago AOR issued a Form I-247 immigration detainer against Moreno to the Winnebago County Sheriff. Am. Compl. ¶ 13, Ex. A.

The first section of the detainer advised the Sheriff that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States." *Id*, Ex. A. In the second section, DHS requested that the Sheriff: (1) maintain custody of Moreno pursuant to 8 CFR § 287.7 for a period not to exceed forty-eight hours to provide DHS time to assume custody of Moreno; (2) complete, sign, and return the form; (3) notify DHS at least thirty

_____

[2] The Chicago AOR for ICE is responsible for Illinois, Indiana, Wisconsin, Missouri, Kentucky, and Kansas. Am. Compl. ¶ 18. The ERO Field Office for the ICE Chicago AOR (the "ERO Field Office") issues detainers for those six states. Defs.' Opp'n 8 (citing Ex. A, Kaufman Decl. at ¶ 2). The ERO Field Office also issues detainers for twenty-four additional states on weekends, holidays, and after normal business hours. *Id.* (citing Ex. A, Kaufman Decl. at ¶ 2). The Chicago Deport Center, which was previously run out of the ICE Chicago AOR, issued detainers nationwide, including the detainer issued to Lopez. *Id.* (citing Ex. A, Kaufman Dec. at ¶ 4).

days prior to Moreno's release or as soon as possible; and (4) notify DHS in the event of Moreno's death or transfer to another institution. *Id.*, Ex. A.

In August 2011, after this case was filed, ICE lifted the detainer against Moreno. Defs.' Opp'n 5. On November 22, 2011, ICE lifted the detainer against Lopez. *Id.* 6.

### III. Plaintiffs' Proposed Class Definitions

In their amended motion for class certification, Plaintiffs request that the Court certify the following class:

> All current and future persons against whom ICE has an active immigration detainer that was issued out of its Chicago Area of Responsibility (AOR) where ICE has instructed the law enforcement agency (LEA) to continue to detain the individual after the LEA's detention authority has expired and where ICE has not served a Notice to Appear or other charging document, has not served a warrant of arrest for removal proceedings, and/or has not obtained an order of deportation or removal.

Pls.' Am. Mot. Class Cert. 5.

Moreno also seeks to represent a sub-class consisting of:

> Members of the primary class who have had detainers issued against them while they are in state or local LEA [law enforcement agency] custody and where ICE has instructed their further detention pursuant to 8 C.F.R. § 287.7.

*Id.*

## Legal Standard

Plaintiffs seek class certification under Fed. R. Civ. P. 23, specifically Rule 23(b)(1) and (2). To be certified, the proposed class first must meet each of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Once these elements are satisfied, Plaintiffs must also demonstrate that class certification is appropriate under Rule 23(b)(1) or Rule 23(b)(2).[3]

---

[3] Under Rule 23(b)(1), a class action may be maintained if "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party

In so doing, Plaintiffs bear the burden of showing that a proposed class satisfies the requirements of Rule 23 by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Court must engage in a "rigorous analysis" to ensure that the requirements of Rule 23 have been satisfied. *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 493 (7th Cir. 2012). A "rigorous analysis" helps protect "absent class members whose rights may be affected by the class certification." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (internal citation omitted).

That said, the Court should not "turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811. Of course, the "boundary between a class determination and the merits may not always be easily discernible." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 599 (7th Cir. 1993) (internal citations and quotations omitted). Consequently, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*; *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (class certification analysis "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim"). And, as the Seventh Circuit has held, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *see Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889–90 & n.6 (7th Cir. 2011).

---

opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

<u>**Analysis**</u>

**I. Scope of Class Definition and Class Ascertainability**

In their opposition to class certification, Defendants initially challenge the class definition proposed by Plaintiffs on two grounds. First, Defendants argue that the class as proposed is overly broad because it includes individuals who may lack Article III standing. Second, Defendants contend that the proposed class and sub-class must fail because they are not reasonably ascertainable.

**A.      Standing**

According to Defendants, the class proposed by Plaintiffs should not be certified because it includes class members who lack standing. Federal courts are limited by Article III of the Constitution to adjudicating actual cases and controversies, and Article III "requires a litigant to have 'standing' to invoke the power of a federal court." *Allen v. Wright*, 468 U.S. 737, 750 (1984). In order to establish standing, Plaintiffs must demonstrate: (1) an "injury in fact"; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Defendants first note that a number of courts of appeal have held that an ICE detainer unaccompanied by a Notice to Appear or a final order of removal "does not cause the subject of the detainer to be in ICE's custody."[4] Because the Chicago AOR issues detainers to individuals held by LEAs within the jurisdiction of those circuits, Defendants contend that the potential class

---

[4]      Defs.' Opp'n 10 n.6 (citing *Cohen v. Lappin*, 402 Fed. App'x 674 (3d Cir. 2010); *Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 539 (5th Cir. 2003); *Garcia v. Taylor*, 40 F.3d 299, 303–04 (9th Cir. 1994); *Galaviz-Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir. 1994); *Roldan v. Racette*, 984 F.2d 85, 88 (2d Cir. 1993); *Santana v. Chandler*, 961 F.2d 514, 516 (5th Cir. 1992); *Prieto v. Gluch*, 913 F.2d 1159, 1162 (6th Cir. 1990); *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir. 1990); *Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir. 1989); and *Campillo v. Sullivan*, 853 F.2d 593 (8th Cir. 1988)).

members located in those circuits have failed to demonstrate an "injury in fact." This argument is unpersuasive.

In denying Defendants' motion to dismiss, the Court cited *Vargas v. Swan*, 854 F.2d 1028 (7th Cir. 1988), to hold that the named Plaintiffs had standing to challenge the legality of their future confinement. Nov. 30, 2012, Mem. Op. and Order 7–8.[5] The fact that other courts of appeal may have held otherwise does not change this Court's analysis. In contrast to the "localized nature of state laws, '[a] single federal law implies a national interpretation. . . . [E]ach court of appeals considers the [federal] question independently . . . without regard to the geographic location of the events giving rise to the litigation.'" *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 853 (N.D. Ill. 2010) (quoting *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993), *cert denied*, 510 U.S. 1073, 114 S.Ct. 883 (1994)). "'[B]ecause there is ultimately a single proper interpretation of federal law, the attempt to ascertain and apply diverse circuit interpretations simultaneously is inherently self-contradictory.'" *Id.* (quoting *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)). As discussed in the November 30, 2012, order, the Seventh Circuit's decision in *Vargas v. Swan* confers standing upon the named Plaintiffs and is binding upon this Court. Accordingly, Defendants' reliance upon the decision of other circuits is misplaced.

---

[5] Although the Seventh Circuit has not specifically addressed whether the threat of future confinement alone satisfies the injury-in-fact requirement for claims under the Fourth and Fifth Amendments, the Court previously found that *Vargas*, which involved a habeas petition, is sufficiently analogous to establish an injury flowing from "custody," which is the very injury that Plaintiffs allege here. *See* Nov. 30, 2012, Mem. Op. and Order 7–8. The Court further notes that, like the plaintiff in *Vargas*, Plaintiffs here also seek a writ of habeas corpus under 28 U.S.C. § 2241. *See* Pls. First Am. Compl. ¶¶ 56–62. *Vargas* would apply squarely to these claims. The Seventh Circuit in *Vargas*, evaluating whether a Form I-247 detainer constituted "custody" for jurisdictional purposes in the habeas context, held that a court would have jurisdiction if the detainer had "as part of its effect the holding of a prisoner for a future custodian who has evinced an intent to retake or to decide the prisoner's status at the end of his or her current confinement." 854 F.2d at 1032. ICE detainers issued to cooperating LEAs place individuals in their custody in this exact situation.

Defendants also argue that, to the extent putative class members are in the custody of LEAs who have declined formally to comply with I-247 detainers, such individuals lack standing because they do not face any threat of extended custody. In support, Defendants cite to a number of LEAs that have elected formally not to comply with a request for extended custody contained in an I-247 detainer. Additionally, Defendants cite to the Third Circuit's recent decision in *Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014), which held that the ICE detainers are merely requests and do not compel LEAs to detain suspected aliens for any length of time. According to Defendants, the *Galarza* case further supports the argument that putative class members in the custody of non-cooperating LEAs lack Article III standing. Defs.' Supplemental Mem. 2.[6]

For their part, Plaintiffs first argued that the ICE detainers were mandatory directives, and not requests. Pls.' Reply 6. In light of *Galarza*, however, Plaintiffs now concede that the detainers are not mandatory. *See* Pls.' Supplemental Memo. 6 ("the detainer regulation cannot be understood as mandatory because any other interpretation would violate the Tenth Amendment.") Additionally, Defendants now have presented evidence that a number of state and local LEAs have formally declined to cooperate with ICE detainers. For example, the Sheriff of Champaign County, Illinois notified ICE Chicago that his "office will not hold inmates based on a routine detainer." Defs.' Opp'n, Ex. B, Sheriff Dan Walsh Champaign Cnty.

---

[6] Although Defendants claim that ICE detainers are merely requests, as Plaintiffs rightly note, the government's position as to this issue has not been entirely consistent. *See, e.g.*, Fed. Defs.' Mem. Supp. Mot. Dismiss 13, *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, No. CV 08-4220 PJH, ECF No. 31 ("The law is clear that ICE agents may detain, and *require* other law enforcement agencies to detain, illegal aliens." (emphasis added)).

Sheriff's Office. The Sheriff of Cook County, Illinois, also does not comply with ICE detainer requests. *Id.*, Ex. B., 11-0-73 Ordinance.[7]

To satisfy the injury-in-fact requirement when seeking injunctive and declaratory relief, Plaintiffs must show that they are under threat of suffering an injury that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Based upon the evidence provided by Defendants and the court's reasoning in *Galarza*, this Court is persuaded that state and local LEAs are not legally required to comply with I-247 detainers. As a consequence, potential class members in the custody of state and local LEAs that have declined to cooperate with the detainers do not face an actual and imminent threat of future confinement as a result of the detainers' issuance.[8] The Court thus finds that such putative class members lack standing and modifies Plaintiffs' class definition to include only individuals in the custody of LEAs that cooperate with ICE detainer requests. *See Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 611 (N.D. Ill. 2009) ("A district court has broad discretion to certify a class and may modify a proposed class definition if modification will render the definition adequate.").[9]

---

[7]    Cook County Ordinance 11-0-73 creates an exception in which its LEAs may comply with a detainer request if "there is a written agreement with the federal government by which all costs incurred by Cook County in complying with the ICE detainer shall be reimbursed." Defs.' Opp'n, Ex. B, 11-0-73 Ordinance. Under 8 C.F.R. § 287.7(e), however, no detainer issued by ICE "shall incur any fiscal obligation on the part of the Department." Thus, Cook County has effectively declined to cooperate with ICE detainer requests.

[8]    As for detainers issued to federal LEAs, there is no indication that federal LEAs would refuse to comply with detainers, and it stands to reason that a federal correctional institution would comply with detainers issued by a sister federal agency.

[9]    At the pleading stage, the Court denied Defendants' motion to dismiss and found standing on the part of the named Plaintiffs. In so doing, the Court was required to consider Plaintiffs' factual allegations as true and construed all reasonable inferences, including the risk of future confinement, in their favor. *See* November 30, 2012 Order at 8 ("At the motion to dismiss stage when all reasonable inferences are drawn in favor of the plaintiff . . . it cannot be said based upon the current record that the Plaintiffs' risk of future confinement is 'conjectural' or 'hypothetical,' or that the mandatory language of 8 C.F.R. §

In response, Plaintiffs contend that class members held by non-cooperating LEAs still face a threat of future confinement by either the LEA itself or by another LEA to which the individual may be transferred. Pls.' Reply 6. But Plaintiffs have not offered any evidence to suggest that LEAs who have formally refused to cooperate with ICE detainer requests would instead comply. Similarly, Plaintiffs have not marshalled evidence to support their contention that detainees held by non-cooperating LEAs would be transferred systematically to compliant LEAs. Furthermore, even if a detainee were transferred from a non-cooperating LEA to a cooperating LEA, Plaintiffs have offered no evidence demonstrating that the non-cooperating LEA would notify the compliant LEA of the detainee's existing immigration detainer.[10] Such theories of purported harm are "too speculative" to constitute a cognizable injury-in-fact. *See Plotkin v. Ryan*, 239 F.3d 882, 886 (7th Cir. 2001).

Turning to Plaintiffs' proposed sub-class, the purpose of the sub-class was to test whether I-247 detainers issued by ICE to state and local LEAs violated the Tenth Amendment. Pls.' Am. Mot. Class Cert. 20. Because such detainers are not mandatory directives to state and local LEAs, the Court concludes that they do not, and certification of the proposed sub-class is unnecessary.

### B. Ascertainability

In order to obtain class certification, Plaintiffs must show "that the class is indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (*citing*

---

287.7 is not followed in practice."). Such a deferential standard contrasts with the "rigorous analysis" that the Court must perform at the class certification stage.

[10]     The current and previous versions of the Form I-247 immigration detainer also contain a box that states, "[n]otify this office in the event of the inmate's death or transfer to another institution." Pls.' Am. Mot. Class Certification, Exs. A-C. Even if ICE were to check that box, Plaintiffs only speculate that a non-cooperating LEA would in fact notify a cooperating transferee LEA of the detainee's existing immigration detainer.

*Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981), and *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)).  *See also Jamie S.*, 448 F.3d 493 ("a class must be sufficiently definite that its members are ascertainable").  Here, Plaintiffs' proposed class is comprised of individuals in custody who meet the following criteria: (1) ICE's Chicago AOR has issued a detainer requesting that the LEA continue to detain the individual after the LEA's detention authority has expired; (2) ICE has not served a charging document, warrant of arrest for removal, or obtained an order of deportation prior to the issuance of the detainer; and (3) the relevant LEA must be one that cooperates with ICE in implementing the detainers.

Defendants do not dispute that the proposed class is "sufficiently definite" or that it can be identified via "objective criteria."  *Cf. EQT Production Co. v. Adair*, --- F.3d ----, 2014 WL 4070457, at * 6 (4th Cir. 2014) ("A class cannot be certified unless a court can readily identify the class members in reference to objective criteria.").  Rather, Defendants object to certification on the grounds that "ascertaining membership would require the manual review of tens of thousands of active detainers."  Defs.' Opp'n 11.  But, the necessity of manually reviewing I-247 detainer forms does not preclude certification of the class.

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012), is instructive. There, the putative class consisted of policyholders of five different insurance companies.  They claimed that the insurers incorrectly imposed certain charges in violation of state law.  The defendants challenged the ascertainability of the class, arguing that "the class is not administratively feasible" because it would require a review of "a great number of policies" issued to the plaintiffs.  *Id.* at 540.  In fact, there were more than 14 million policy transactions during the class period.  *Id.* at 540 n.3.  The Sixth Circuit, however, rejected the defendants' reasoning, noting that "[s]everal other courts have found that the size of the potential class and

the need to review individual files to identify its members are not reasons to deny class certification." *Id.* (collecting cases). Further, it agreed with the district court's reasoning that "the need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained." *Id.*

Similarly here, the putative class is "sufficiently definite" and identifiable through "objective criteria." Identifying those individuals who meet the first criterion is straightforward; Defendants can compile a list of detainees to whom the Chicago AOR has issued an I-247 detainer with the top box checked. *Id.* 11-12. As for the second criteria, ICE concedes that the information necessary to make this assessment is available as well. Lastly, identifying class members who meet the third criterion is also administratively feasible. The ICE detainer forms contain a bottom section requesting a receipt of acknowledgement from the LEA. *See* Pl.'s Mem. Supp. Class Cert., Exs. A, B, C. The ICE detainer forms further request that the LEA sign and return the form in an enclosed envelope or by fax. *See id.* In the 2011 and 2012 versions of the detainer, ICE also suggests that the LEA keep a copy for record-keeping purposes. *See id.*, Exs. B, C. The record indicates that both federal and state LEAs send receipts of acknowledgement to ICE. *See* Am. Compl., Ex. A (federal receipt of acknowledgement signed for Plaintiff Lopez); Pls. Reply Supp. Mot. Intervene, Ex. A (state receipt of acknowledgement signed for Proposed Intervenor Sergey Mayorov). ICE tracks non-cooperating LEAs, and submitted to the Court a list of these LEAs. *See* Defs.' Opp'n, Ex. B. Based upon the list of non-cooperating LEAS submitted by ICE and its receipt of detainer acknowledgements from LEAs, the record indicates that ICE can identify those LEAs that comply with ICE detainers. "The fact that this manual process may be slow and burdensome cannot defeat the

ascertainability requirement." *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003).

For these reasons, the Court finds that Plaintiffs have identified an ascertainable class, and the fact that Defendants may need to conduct a manual review to determine the composition of the class is not sufficient grounds for denying class certification.

## I. Rule 23(a)

### A. Numerosity

Under Rule 23(a), Plaintiffs must first demonstrate that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). According to information provided by Defendants, ICE/ERO Chicago has issued more than 23,000 detainers requesting that LEAs hold individuals up to forty-eight hours based on a checkbox indicating that ICE Chicago has either "[i]nitiated an investigation to determine whether this person is subject to removal from the United States" or "[d]etermined that there is reason to believe the individual is an alien subject to removal from the United States." Pls.' Am. Mot. Class Cert. 7. Thus, the Court finds that Plaintiffs have demonstrated that the proposed class is sufficiently numerous. *See Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330, 331 (N.D. Ill. 2009) ("Although there is no number requiring or barring a finding of numerosity, a class including more than 40 members is generally believed to be sufficient.").

### B. Commonality

Rule 23(a) also requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Furthermore, commonality "does not demand that every member of

the class have an identical claim. It is enough that there be one or more common questions of law or fact[.]" *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). But, as the Supreme Court explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 157). "Their claims must depend upon a common contention . . . [and] [t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Defendants argue that Plaintiffs have failed to satisfy Rule 23(a)(2)'s commonality requirement because: (1) the existence of probable cause to detain an individual is based on individualized questions of fact and law and not subject to a common answer; (2) the proposed class contains individuals whose detainers have ripened and those whose detention will never be extended; and (3) ICE Chicago issues detainers subject to the law of various federal, state, and local jurisdictions. These arguments are unsupported and do not preclude certification.[11]

Defendants first contend that the proposed class lacks commonality because, at least as they see it, Plaintiffs are challenging thousands of individual probable cause determinations. Defs.' Opp'n 16–18. Defendants, however, misunderstand the nature of Plaintiffs' claims. Rather than challenge the reasonableness or constitutionality of each individual decision to issue a detainer, Plaintiffs are challenging the general policies and procedures used by Defendants when issuing detainers. Specifically, Plaintiffs allege that, whatever the language on the I-247 Forms may have been, Defendants, as a matter of general policy, issued detainers without

---

[11]     In their supplemental memorandum, Defendants also argue that Plaintiffs' putative class lacks commonality because the detainers are merely requests and certain LEAs do not honor the requests. Defs.' Supplemental Mem. 2–3 (citing *Galaraza*, 745 F.3d at 653–45). Because the Court has modified the class definition to exclude individuals in the custody of non-cooperating LEAs, this argument is moot.

engaging in any analysis to determine whether there was probable cause to believe that the individual in question was subject to removal from the United States.[12]  *See* Am. Compl. ¶¶ 36–45 (alleging that ICE's standard policies and procedures when issuing detainers without probable cause exceeded Defendants' statutory authority and violated Fourth Amendment).  Additionally, Plaintiffs assert that Defendants did not institute a procedure, by which such individuals could challenge the detainers once they were issued, in a manner that comports with due process.  *Id.* ¶¶ 46–51 (alleging that Defendants failed to provide a sufficient mechanism by which individuals could challenge the detainers in accordance with due process).

These claims present common issues of fact and law that have class-wide application.  As discovery has shown, ICE has standard policies and procedures relating to the issuance of detainers, and they are uniformly applied.  (*See* Pls.' Am. Mot., Ex. D, Dep. Kerry Kauffman 29:19–30:21; 53:3–9; Ex. M, "Interim Policy Number 10074.1: Detainers"; Ex. N, Dec. 21, 2012, "Guidance on the Use of Detainers".).  From this, a number of common questions arise.  For example, what analysis, if any, were Defendants required to perform prior to issuing I-247 detainers?  What policies and procedures, if any, did Defendants have that governed when I-247 detainers would be issued?  What policies and procedures existed regarding how I-247 detainers were tracked and reviewed after they were issued?  Plaintiffs' allegations also present class-wide questions of law.  Did the policies and procedures governing the issuance of I-247 detainers meet statutory and constitutional muster?  Did Defendants' post-issuance policies and procedures satisfy due process requirements?

---

[12]     The fact that Defendants claim the opposite — that their policies and procedures in fact require a determination of a "reason to believe" prior to issuing a detainer — goes strictly to the merits of Plaintiffs' claims and is an argument better suited for summary judgment.

Answering these questions will not require an inquiry into whether probable cause existed for each individual class member. Nor will it require individualized examinations into how detainers were processed and implemented once they were issued. As a result, Plaintiffs' claims implicate common questions of fact and law capable of classwide resolution. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122–24 (9th Cir. 2009) (finding commonality in proposed class of aliens detained without a hearing, because the constitutional question posed by detention of every class member "will largely be determined by its answer"); *Spano*, 633 F.3d at 585–86; *Alliance to End Repression*, 565 F.2d at 978–79. Furthermore, to the extent that these procedures and practices were statutorily and constitutionally deficient, the putative class members suffered from the same alleged injury. *Borowski v. City of Burbank*, 101 F.R.D. 59, 62 (N.D. Ill. 1984) ("[C]ommonality requirement is satisfied as a common question of law exists in the interpretation and validity of the challenged [ordinance]."); *see also Does v. City of Indianapolis, Indiana*, No. 1:06CV865 RLYWTL, 2006 WL 3365672, at **2, 4 (S.D. Ind. Nov. 20, 2006) (noting that "the very existence of the challenged provisions represents . . . [a] violation of the Constitution," that "[t]he legal issue uniting all class members is whether the challenged ordinance is constitutional," and that there is "an assumption of commonality where plaintiffs seek certification of an injunctive class under Rule 23(b)(2) to right alleged constitutional wrongs") (citing *Nicholson v. Williams,* 205 F.R.D. 92, 98 (E.D.N.Y.2001)).

Next, Defendants argue that the proposed class fails Rule 23(a)'s commonality requirement because it contains individuals whose detainers have ripened and individuals whose detention will never be extended. But as explained above, a putative class member in the custody of an cooperating LEA is injured-in-fact when the detainer is issued, because an actual and imminent threat of future confinement exists as of that time. Whether a class member

subsequently is held pursuant to the detainer goes more to the extent of the injury rather than the fact of injury itself.  In any event, this distinction is largely academic here, where Plaintiffs are seeking declaratory relief that Defendants' detainer policies are unconstitutional and statutorily unsound and injunctive relief preventing Defendants from subjecting them to these policies. Am. Compl. Prayer for Relief.  In short, the proposed class members suffer the same injury in the threat of future confinement, and this injury is not dependent upon whether they subsequently are confined upon their release from the LEA.

The Court also rejects Defendants' argument that commonality is lacking because the Chicago AOR issues detainers subject to the law of various federal, state, and local jurisdictions. As explained above, this Court is bound by Seventh Circuit precedent and considers federal questions "without regard to the geographic location of the events giving rise to the litigation." *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d at 853 (internal quotations omitted).  Because Plaintiffs have demonstrated that the proposed class suffered the same injury based upon common questions of fact and law that are capable of classwide resolution, the Court finds that they have satisfied Rule 23(a)'s commonality requirement.

### C.  Typicality

Defendants also challenge Rule 23(a)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(4).  "The question of typicality in Rule 23(a)(3) is closely related to the . . . question of commonality."  *Rosario*, 963 F.2d at 1018; *see also Barragan*, 259 F.R.D. at 334 (same).  "A plaintiff's claim is typical if it: (1) arises from the same event, practice or course of action that gives rise to the claims of the other class members; and (2) the claims of the plaintiff and the class members are based on the same legal theory."  *Barragan*, 259 F.R.D. at 334 (citing

*Rosario*, 963 F.2d at 1018); *see also Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 455 (N.D. Ill. 2011).

Defendants argue that Moreno and Lopez are not typical of the class because their detainers were issued in a form that is no longer in use. Defendants point to three differences between the forms issued to Moreno and Lopez and the detainer forms currently in use: (1) the checkbox that previously stated "an investigation has been initiated" has been changed to state that ICE has determined that there is "reason to believe" an individual is an alien subject to removal; (2) the form now contains a checkbox that instructs the LEA with custody of the detainee to provide a copy of the detainer to the individual; and (3) the form now lists a telephone number that individuals can call if they have a complaint regarding the detainer.

First, regardless of the change in language of the detainer forms, the evidence indicates that the procedures employed by the Chicago AOR to investigate and issue detainers have not changed.

> Q: Were there any changes to the procedures followed by the Chicago AOR when the new detainer form was released?
>
> A: No, the procedures for issuing a detainer didn't change, just basically the detainer form did.
>
> Q: . . . [S]ince the new form . . . was issued, has the Chicago AOR changed its procedures for investigating a detainer?
>
> A: No.

Pls.' Am. Mot. Class Cert., Ex. A, Dep. Kerry Kauffman 73:20–74:4. Because Plaintiffs allege that ICE issued detainers without probable cause as a matter of policy, and the policy for investigating and issuing detainers has not changed, Moreno's and Lopez's claims remain typical of the class despite the revisions to the form. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("The typicality requirement may be satisfied even if there are

factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.") (internal citation omitted).

Similarly, the crux of Plaintiffs' due process claim is that the procedures created by Defendants to permit individuals to contest I-247 detainers (to the extent any procedures exist) are insufficient to satisfy constitutional requirements. The revisions to the detainer form requesting that the LEA provide a copy of the form to the detained individual and indicating a telephone number for the individual to call may have some relevance in assessing this question, but Defendants have not argued (nor can they) that these changes in and of themselves were sufficient to satisfy due process requirements.[13] The spotlight of the due process inquiry then remains on the overall policies and procedures that Defendants employed to hear and resolve objections to the detainers by individuals who were subject to them. In this way, Moreno and Lopez's due process claims are typical of those of the rest of the class.[14]

Simply put, Moreno and Lopez's claims arise from the same policies and procedures as those of the proposed class. Furthermore, their claims are based upon the same legal theories, *i.e.,* that Defendants' policies and procedures (or lack thereof) with respect to detainers exceeded Defendants' statutory authority and violated the class members' Fourth Amendment and due process rights. Accordingly, Plaintiffs have satisfied the typicality requirement of Rule 23(a)(4).

---

[13]     For example, there is evidence that Defendants had no authority to require cooperating LEAs to provide individuals with a copy of the detainers and did not keep track of whether LEAs complied with that request. Pls.' Am. Mot. Ex. K at 4–5. Similarly, the mere fact that the detainer form listed a telephone number does not prove what if anything was done when individuals called it.

[14]     To the extent that the differences in the forms create a conflict among class members during the course of these proceedings, the Court has the discretion to create subclasses corresponding to the time periods during which the different versions of the detainer form were used. *See, e.g.*, *Thomas v. Matrix Corp. Servs.*, No. 10 C 5093, 2012 WL 3581298, at *3 (N.D. Ill. Aug. 17, 2012) (creating time-delimited subclasses) (citing *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 888 (7th Cir. 2011)). For the reasons explained, they do not preclude certification now.

### D. Adequacy

Finally, Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Defendants do not challenge the adequacy of the proposed class counsel. Instead, Defendants cite to *Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008), and argue that Moreno and Lopez are inadequate class representatives because they are no longer subject to an ICE detainer. Defs.' Opp'n 15. In doing so, Defendants once again argue that the named Plaintiffs lack standing and that their claims are moot, but these arguments have already been rejected by the Court.

In any event, *Arreola* does not stand for the broad proposition, as Defendants suggest, "that a named plaintiff no longer suffering an injury cannot serve as an adequate representative of an injunction-seeking class." *Id.* The plaintiff in *Arreola* filed suit seeking to represent a class of inmates who were prohibited from using crutches in certain units of the jail. 546 F.3d at 791–93. In finding that the plaintiff was not an adequate class representative, the Seventh Circuit noted that "[b]y the time [plaintiff] filed the lawsuit, he was no longer at the Jail." *Id.* at 799. The Seventh Circuit reasoned, "[t]o permit the certification of a class headed by a 'representative' who did not have a live controversy with the defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions." *Id.* (quoting *Holmes v. Fisher*, 854 F.3d 229, 233 (7th Cir. 1988)).

Unlike the plaintiff in *Arreola*, Moreno and Lopez had live controversies at the time they filed suit. As the Court mentioned in its November 30, 2012, Order, Moreno and Lopez had

active immigration detainers lodged against them on the day their suits commenced, and they have sufficiently demonstrated an injury-in-fact. Nov. 30, 2012, Mem. Op. and Order 6–9. Furthermore, the fact that Defendants removed Moreno's and Lopez's detainers does not moot their claims for the reasons previously discussed. *Id.* 9–11.[15] Because the named Plaintiffs' claims are not moot and they suffered an injury-in-fact similar to that of the putative class members, the Court is satisfied that Moreno and Lopez are adequate class representatives.[16]

## II.    Rule 23(b)(1) and (2)

Once Rule 23(a) is satisfied, the proposed class must also fall within one of the three categories enumerated in Rule 23(b): "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because the risk that the class action adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano*, 633 F.3d at 583; Fed. R. Civ. P. 23(b)(1)-(2). Plaintiffs move to certify their class under Rule 23(b)(1) and (2).

A court may certify a class under Rule 23(b)(1)(A) if individual adjudications "would create a risk of: inconsistent or varying adjudications with respect to individual class members

---

[15]    The Court previously has held that Moreno's and Lopez's claims met the two elements of the "inherently transitory" exception: (1) it must be uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there must be a "constant class of persons suffering the deprivation complained of in the complaint." *Olson v. Brown*, 594 F.3d 577, 577, 582 (7th Cir. 2010) (citing *Gernstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).

[16]    Defendants also devote four sentences in arguing that Plaintiffs are inadequate class representatives because their detainers never ripened. Defs.' Opp'n 15–16. As the Court previously explained, Moreno and Lopez suffered an injury-in-fact from the threat of future detention and the fact that Defendants lifted the detainers does not make their claims moot. Nov. 30, 2012, Mem. Op. and Order 6–11.

that would establish incompatible standards of conduct for the party opposing the class." Plaintiffs contend that ICE's standard policies and procedures used to issue detainers violate their Fourth Amendment and due process rights. Here, individual adjudications would create a risk of inconsistent results that would establish incompatible standards of conduct for Defendants. If a court finds any portion of Defendants' challenged policies and procedures to be unconstitutional, Defendants would be required to modify the infringing policy or procedure. If another court, however, rules otherwise, Defendants would not be required to modify the same policies and procedures. Because individual adjudications could establish incompatible standards of conduct for Defendants, certification of Plaintiffs' class under Rule 23(b)(1)(A) is appropriate.

In their brief, Defendants claim that Plaintiffs fail to satisfy the requirements of Rule 23(b)(1)(A) because Plaintiffs challenge individual probable cause determinations in which varying adjudications would be proper. As noted above, Plaintiffs challenge Defendants' general detainer policies and procedures, not individual probable cause determinations.

Defendants also cite *Portis v. City of Chicago, Illinois*, 613 F.3d 702 (7th Cir. 2010), and *Rahman v. Chertoff*, 530 F.3d 622 (7th Cir. 2008), and argue that "it is unclear why an individual adjudication regarding those [national] policies would not have the same effect as a class action without the management issues inherent to a certified class." But Defendants' position does not find support in these cases. In *Portis*, the Seventh Circuit reversed the district court's certification of a class because "common questions d[id] not predominate," not because the class failed to meet Rule 23(b)(1) as Defendants suggest. 613 F.3d at 705–06. Likewise in *Rahman*, the Seventh Circuit did not reverse the district court's certification of a class because the class failed to meet Rule 23(b)(1). 530 F.3d at 626–28. Instead, the court found the certified class too

broad and equivalent to a class of "all persons in the United States who have been, or ever will be, stopped without probable cause." *Id.* at 626.

Alternatively, a court may certify a class under Rule 23(b)(2) if a defendant has "refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs allege Defendants have refused to modify their constitutionally infirmed policies and procedures related to the issuance and implementation of detainers. Because Plaintiffs seek a declaratory judgment and injunctive relief that would inure to the benefit of the entire class, certification under Rule 23(b)(2) is also appropriate. *See* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1772 8–10 (2005) (noting it is "common for an action to fall under Rule 23(b)(1) and one of the other categories in Rule 23(b)" and actions maintained under both Rule 23(b)(1) and Rule 23(b)(2) "are treated alike for purposes of notice to passive class members and in measuring the effect of the judgment").[17]

## Conclusion

For the reasons discussed herein, the Court grants Plaintiffs' motion for class certification in part and certifies a class defined as follows:

> All current and future persons against whom Immigration and Customs Enforcement (ICE) has issued an immigration detainer of the Chicago Area of Responsibility where: (1) ICE has instructed the law enforcement agency (LEA) to continue to detain the individual after the LEA's authority has expired; (2) where ICE has not served a Notice to Appear or other charging documents, has not served a warrant of arrest for removal proceedings, and/or has not obtained an order of deportation or removal with respect to the individual; and (3) where the LEA cooperates with ICE in complying with detainers.

---

[17] Defendants repeat their argument that they changed the I-247 detainer forms and therefore addressed the concerns raised by Plaintiffs in this case. However, as noted above, it is not at all clear based upon the current record whether the two modifications upon which Defendants rely are sufficient in and of themselves to address the constitutional deficiencies asserted by Plaintiffs.

**SO ORDERED**                    ENTER:  9/30/14

_____
**JOHN Z. LEE**
**United States District Judge**