**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE JIMENEZ MORENO and MARIA JOSE LOPEZ, | ) | |
| | ) | |
| on behalf of themselves and all others similarly situated, | ) | |
| | ) | |
| *Plaintiffs*, | ) | No. 1:11-cv-05452 |
| | ) | |
| vs. | ) | Judge John Z. Lee |
| | ) | |
| JANET NAPOLITANO, et al., | ) | |
| | ) | |
| in their official capacities, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' LOCAL RULE 56.1(a) STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiffs Jose Jimenez Moreno and Maria Jose Lopez, on behalf of themselves and the certified class, hereby submit the following statement of material facts as to which there is no genuine issue, in support of their motion for summary judgment.

I. **Parties and Procedural Matters**

1. Plaintiff Jose Jimenez Moreno ("Moreno") is a U.S. citizen from birth. At all times relevant to this litigation, he was not—and is not today—removable from the United States. [*See* Defs.' Answer to Am. Compl., Dkt. # 82, ¶ 13; Ex. A, Certificate of U.S. Citizenship for Moreno; Ex. C, Defs.' Resp. to Pls.' First Set of Requests for Admission ("RFA"), Req. No. 8 & 9; Defs.' Mem. in Opp. to Class Certification, Dkt. # 109, at 3.]

2. Plaintiff Maria Jose Lopez has been a Lawful Permanent Resident ("LPR") since 1997. At all times relevant to this litigation, she was not—and is not today—removable from the United States. [*See* Defs.' Answer to Am. Compl., Dkt. # 82, ¶ 14; Ex. B, LPR Application for

Lopez (approved Aug. 5, 1997); Ex. C, Defs.' Resp. to Pls.' RFA, Req. Nos. 8 & 9; Defs.' Mem.

in Opp. to Class Certification, Dkt. # 109, at 3.]

  3.  Plaintiffs Moreno and Lopez represent the following certified class:

> All current and future persons against whom Immigration and Customs
> Enforcement (ICE) has issued an immigration detainer [from] the Chicago
> Area of Responsibility where: (1) ICE has instructed the law enforcement
> agency (LEA) to continue to detain the individual after the LEA's
> authority has expired; (2) where ICE has not served a Notice to Appear or
> other charging documents, has not served a warrant of arrest for removal
> proceedings, and/or has not obtained an order of deportation or removal
> with respect to the individual; and (3) where the LEA cooperates with ICE
> in complying with detainers.

[Mem. Op. & Order on Class Certification, Dkt. # 146, at 24.]

  4.  Defendants DHS Secretary Jeh Johnson (successor to Janet Napolitano), ICE

Director Sarah Saldaña (successor to John Morton ), ICE Chicago Field Office Director Ricardo

Wong, and ICE Law Enforcement Support Center (LESC) Director David Palmatier (and his

successors) (collectively "Defendants" or "ICE"), in their official capacities, are responsible for

policies and practices regarding the issuance of immigration detainers against class members.

[Defs.' Answer to Am. Compl., Dkt. # 82, ¶ 15-18, Mem. Op. & Order on Class Certification,

Dkt. # 146, at 14-18.]

  5.  By definition, in light of the scope of the certified class, a substantial part of the

events and omissions giving rise to Plaintiffs' claims occurred in this district, and the custodian

for purposes of class members' immigration detainers is located in the district. [*See* Pls.' Am.

Compl., Dkt # 78, ¶¶ 10-11.]

## II. ICE's Immigration Detainer Forms

  6.  ICE issues immigration detainers (now Form I-247D or Form I-247X) to federal,

state, and local law enforcement agencies ("LEAs") to advise the LEA that ICE seeks custody of

an individual currently detained by the LEA. [8 C.F.R. § 287.7(a); Mem. Op. & Order on Cross

Mots. for J. on Pleadings, Dkt. # 144, at 8.]

7.      Since this litigation was filed, ICE has used five different detainer forms: the

August 2010 revision, the December 2011 revision, the December 2012 revision, the June 2015

Form I-247D, and the August 2015 Form I-247X. [Mem. Op. & Order on Class Certification,

Dkt. # 146, at 2-3; Pls.' Mem. in Support of Class Certification, Dkt. # 95, at Exs. A-C,

DHS000115-121; Ex. D; Ex. HH.] Despite the multiple revisions—and setting aside the two

named Plaintiffs—ICE has not rescinded or replaced outstanding detainers issued using the

previous forms. [*See* Ex. E, P. Miller Dep. 105: 4-16, 211:11-24 (designated by Defendants

under Rule 30(b)(6)); Ex. F, K. Kauffman Dep. 52:1-53:19, 73:8-19 (also designated by

Defendants under Rule 30(b)(6).]  ICE views all outstanding detainers, irrespective of which

detainer form was used, as continuing to be valid. [*Id.*]

8.      The first three versions of the detainer form contain two main sections:

checkboxes at the top of the form that explain the basis for issuing the detainer, and checkboxes

at the bottom of the form that request that the LEA take certain actions.  [Mem. Op. & Order on

Class Certification, Dkt. # 146, at 2-3.]  The June 2015 I-247D and the August 2015 I-247X

versions maintain the content of these two main sections and then include an additional section

to explain why the subject of the detainer is an enforcement priority. [*See* Ex. D, at DHS002702;

Ex. HH, at DHS002834.]

9.      Currently, ICE uses the June I-247D detainer form against individuals that it

deems the highest enforcement priorities, while the August I-247X detainer form is used against

individuals that ICE has designated as lower enforcement priorities. [*See* Ex. II, at DHS002770-

2776, 2785-2787, 2791.]  Individuals subject to the August I-247X detainer form are class

members only if they are the subject of a detainer issued under Section B.2 of this form. [*See* Ex. HH, at DHS002834; Ex. II, at DHS002788-2790.]

10.     Under the class definition—and regardless of the particular detainer form used— the class members are all necessarily individuals who are or will be subject to detainers where ICE has not indicated that the detainer is supported by: (1) service of a Notice to Appear or other charging document; (2) service of a warrant of arrest; or (3) issuance of an order of deportation or removal.  [Mem. Op. & Order on Class Certification, Dkt. # 146, at 11-14; Pls.' Mem. in Support of Class Certification, Dkt. # 95, Exs. A-C, DHS000115-121.] While DHS has changed the description of the checkboxes in the June 2015 I-247D and August I-247X versions, individuals who are or will be subject to detainers issued under those new forms would still be members of the class if such detainer is not supported by either a final order of removal or pending removal proceedings (i.e., service of a Notice to Appear and warrant of arrest). [Ex. D, at DHS002702; Ex. HH, at DHS002834; *see* 8 C.F.R. §§ 239.1(b), 236.1(b)(1) (warrant of arrest can be issued only after a Notice to Appear), 1239.1.]

11.     Depending on the particular form used, the detainer issued with respect to the class members will necessarily have been based on a checkbox indicating that ICE has either "initiated an investigation" (August 2010 and December 2011), "determined that there is a reason to believe the individual is an alien subject to removal from the United States" (December 2012), or concluded that "[p]robable cause exists that the subject is a removable alien." (June 2015 I-247D and August 2015 I-247X). [Ex. G; Ex. H, at DHS000116; Ex. I, at DHS000119; Ex. D, at DHS002702; Ex. HH, at DHS002834.]

12.     Class members who are subject to the June 2015 I-247D detainer or August 2015 I-247X detainer are further provided generic information implying investigative steps ICE may have undertaken to reach its assertion of "probable cause," namely:

- biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

- statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

[Ex. D, at DHS002702; Ex. HH, at DHS002834.]

13.     All five versions of the detainer form request that the LEA hold the individual for up to 48 hours beyond the time when the individual is otherwise eligible for release from LEA custody—whether the individual has paid bail, been acquitted, received a dismissal of charges, or completed a prison sentence—so that DHS can assume physical custody of the individual. [Mem. Op. & Order on Class Certification, Dkt. # 146, at 3; Ex. D, at DHS 0002702; Ex. HH, at DHS002834.]

### III.     ICE's Detainer Policies and Practices

14.     Despite changes to the detainer form and changes to ICE's enforcement priorities over the years, ICE's policies and practices for investigating and issuing detainers against class members have remained uniform and unchanged as they relate to class members' legal claims. [Mem. Op. & Order on Class Certification, Dkt. # 146, at 16, 19; Ex. J, at DHS002665-67 (training materials describing the changes to the detainer process after June 2015 as involving only enforcement priorities); *compare* Ex. F, K. Kauffman Dep. 20:1-4, 20:18-23, 29:19-30:12, 41:23-51:7, 57:24-59:12, 73:20-74:4 (testifying to standard detainer

procedures that rely on biometric fingerprint identification if available, federal database records checks, limited circumstances when ICE agents might speak with a subject, and ICE agents' practice of issuing detainers without any judicial or other review) *and* Ex. K, at DHS000048 (Secure Communities standard operating procedures for issuing detainers dated Dec. 1, 2011) *and* Ex. E, P. Miller Dep. 31:4-21, 184:4-14 (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly) *and* Ex. L, J. Antia Dep. 30:21-42:8, 80:15-81:20, 166:17-23 (testifying to standard procedures in issuing a detainer, including biometric fingerprint identification if available, federal database records checks, circumstances when she may interview a subject, and ICE agents' practice of issuing detainers without any judicial or other review) *and* Ex. M, C. Schilling Dep. 25:6-26:10, 139:24-143:1 (same) *with* Ex. N, at DHS002649-2650 (DHS Directives, Instruction No: 044-01-001, "Implementing Department of Homeland Security Immigration Enforcement Priorities" (Issue Date: June 10, 2015) (instruction on investigating and issuing immigration detainers after June 2015, which closely tracks the procedures testified to by ICE officials Kauffman, Antia, and Schilling and does not supersede the written detainer policies from August 2, 2010 (Ex. O), Secure Communities detainer procedures (Ex. K, at DHS000048), and written detainer policy dated Dec. 21, 2012 (Ex. P)) *and* Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers, which tracks previous detainer procedures) *and* Ex. II, at DHS002788-2790, 2793-2795 (training material on using the I-247X form as a detainer, which tracks the ICE training on use of the June I-247D detainer form and previous detainer procedures).]

15.     ICE does not have a written policy explaining how an officer is required or advised to conduct his investigation to determine whether to issue a detainer. [Ex. O, August 2,

2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy); Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (August 2015 I-247X detainer training materials); Ex. E, P. Miller Dep. 31:4-21, 184:4-14 (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly), 56:20-64:8.] ICE's only written policy and general practice is to rely on biometric fingerprint checks (if available) and searches for the targeted individual in four DHS databases (CIS, CLAIMS, TECS, ENFORCE). [*See, e.g.,* Ex. K, at DHS00048, DHS00060 (checklist showing the standard four DHS databases reviewed); Ex. F, K. Kaufmann Dep. 57:5-59:12, 74:5-75:15; 157:23-158:13.] ICE has no policy requiring officers to interview an individual or other relevant individuals before issuing a detainer. [Ex. E, P. Miller Dep. 58:21-59:13; Ex. F, K. Kauffman Dep. 58:7-14; Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy); Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (training materials on using the I-247X form as a detainer).]

### A. Determination of Probable Cause

16.     ICE's detainer policy does not require its agents to support a determination to issue an immigration detainer with any statement, much less a sworn, particularized statement of probable cause as to why a class member is a noncitizen and removable. [*See* Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. K, at DHS000048; Ex. P; Ex. N, at

DHS002649-2650; Ex. J, at DHS002670-2673, 2679-2682; Ex. II, at DHS002788-2790, 2793-2795; Ex. E, P. Miller Dep. 31:4-21, 184:4-14  (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly); Ex. F, K. Kauffman Dep. 49:21-50:20 (testifying that ICE agents do not need to explain why they issue a detainer but that there probably should be a written policy); Ex. M, C. Schilling Dep. 139:24-143:1 (testifying that neither before nor after the fact do ICE agents have to explain their basis for issuing a detainer); Ex. L, J. Antia Dep. 164:7-165:6, 166:24-167:4 (same).]

17.     ICE agents do not follow any practice that requires supporting a determination to issue an immigration detainer with a sworn, particularized statement of probable cause as to why a class member is a noncitizen and removable. [*See* Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. K, at DHS000048; Ex. P; Ex. N, at DHS002649-2650; Ex. J, at DHS002670-2673, 2679-2682; Ex. II, at DHS002788-2790, 2793-2795; Ex. E, P. Miller Dep. 31:4-21, 184:4-14  (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly); Ex. F, K. Kauffman Dep. 49:21-50:20 (testifying that ICE agents do not need to explain why they issue a detainer but that there probably should be a written policy); Ex. M, C. Schilling Dep. 139:24-143:1 (testifying that neither before or after do ICE agents have to explain their basis for issuing a detainer); Ex. L, J. Antia Dep. 164:7-165:6, 166:24-167:4 (same).]

18.     ICE's detainer policy does not require its agents to obtain a determination of probable cause from a detached and neutral judicial officer, such as an immigration judge or federal magistrate, either before seeking a class member's arrest on an immigration detainer (i.e., a valid warrant) or within 48 hours after a class member's arrest on an immigration detainer. [*See* Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. K, at

DHS000048; Ex. P; Ex. N, at DHS002649-2650; Ex. J, at DHS002670-2673, 2679-2682; Ex. II, at DHS002788-2790, 2793-2795; Ex. E, P. Miller Dep. 31:4-21, 184:4-14 (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly); Ex. M, C. Schilling Dep. 141:3- 23; Ex. L, J. Antia Dep. 80:21-81:3, 166:17-167:4.]

19.     ICE agents do not follow any practice of obtaining a determination of probable cause from a detached and neutral judicial officer, such as an immigration judge or federal magistrate, either before seeking a class member's arrest on an immigration detainer (i.e., a valid warrant) or within 48 hours after a class member's arrest on an immigration detainer. [*See* Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. K, at DHS000048; Ex. P; Ex. N, at DHS002649-2650; Ex. J, at DHS002670-2673, 2679-2682; Ex. II, at DHS002788-2790, 2793-2795; Ex. E, P. Miller Dep. 31:4-21, 184:4-14 (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly); Ex. M, C. Schilling Dep. 141:3- 23; Ex. L, J. Antia Dep. 80:21-81:3, 166:17-167:4.]

20.     In its June 2015 I-247D and I-247X detainer training materials, ICE asserts for the first time that an immigration detainer is ***not*** an arrest, thus suggesting that the Fourth Amendment does not apply to immigration detainers as a matter of law.  [Ex. J, at DHS 002681 ("Although a detainer is not an arrest . . . as a matter of policy DHS requires probable cause . . . ."); Ex. II, at DHS002794 ("Although a detainer is not an arrest, as a matter of policy, DHS requires that prior to issuing a detainer, an immigration officer must possess probable cause that the subject is a removable alien.").]  Previously, ICE took a different view on this issue, conceding that a detainer is an arrest that must be supported by probable cause.  [Ex. Q, at DHS

000098 ("A detainer [that requests detention] is an arrest that must be supported by probable cause."); Ex. R, at DHS2588 (referring to detainers as proxy arrests).]

21. As described on the June 2015 I-247D detainer form [Ex. D, at DHS002702] and the August I-247X detainer form [Ex. HH, at DHS002834], and as reiterated in its June 2015 detainer policy and training materials, as well as the I-247X training materials, ICE's only policy with respect to issuing detainers is to provide generic guidance on the types of investigative steps an agent might undertake—including biometric fingerprint identification, federal database searches, and obtaining statements from the individual. [*See* Ex. N, at DHS002649-50; Ex. J, at DHS002682; Ex. II, at DHS2789.]

22. ICE concedes that "[a]s a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a USC [U.S. citizen]." [Ex. S; Ex. E, P. Miller Dep. 81:6-19 (testifying that this statement equally applies to immigration detainers).]

23. Likewise, ICE has previously conceded that it must have probable cause to believe that an individual is a noncitizen who does not have legal status or has a criminal conviction(s) that would make her removable, before it can request an LEA to arrest and detain the noncitizen on an immigration detainer. [8 U.S.C. § 1357(a)(2); Ex. T (citing *United States v. Cantu*, 519 F.2d 494 (7th Cir. 1975)).]

24. In its June 2015 detainer training materials, ICE reiterates that "ICE cannot assert its civil immigration enforcement authority to arrest or detain a U.S. citizen (USC) or non-removable alien" [Ex. J, at DHS 002677.]

25. ICE does not have any written policy instructing its agents on how to establish probable cause to believe that a targeted individual is a noncitizen and removable from the United States before issuing a detainer. [Ex. O, August 2, 2010 detainer policy (partially

superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy);

Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673,

2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-

2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (August 2015 I-

247X detainer training materials); Ex. E, P. Miller Dep. 31:4-21, 184:4-14 (testifying that the

only detainer policies that exist are those that are in writing, and that the written policies apply

uniformly), 56:20-64:8.]

26.     For example, ICE does not have a written policy or checklist requiring or

advising agents to gather and analyze information showing place of birth; date of birth; whether

the individual is an LPR and (if so) when that status was obtained; whether the individual is in

another lawful status (asylee, visa holder); whether the individual has a criminal conviction that

makes her removable; whether the individual naturalized to U.S. citizenship; whether the

individual has a U.S. citizen parent and when the U.S. citizen parent obtained citizenship; or

whether the individual may have acquired or derived U.S. citizenship automatically through a

parent's citizenship. [*Id.*; *See* Ex. F, K. Kauffman Dep. 57:5-21, 80:5-17, 92:15-93:12; Ex. E,

P. Miller Dep. 48:21-49:1, 56:20-64:8.]   An ICE agent might ask questions that elicit this

information only after the individual has already been arrested on the detainer and brought into

ICE's physical custody.  [Ex. E, P. Miller Dep. 210:15-211:5, 213:5-7.]

27.     ICE does not require its agents to investigate whether an individual's parent or

parents are U.S. citizens—information necessary to determine whether the individual may have

derived or acquired U.S. citizenship automatically through the parents' citizenship—before

issuing a detainer. [Ex. N, at DHS002649-2650; Ex. E, P. Miller Dep. 57:25-58:4, 62:14-63:9

(discussing Dec. 21, 2012 detainer policy).]

28. ICE admits that there are numerous ways by which a foreign-born individual could acquire or derive citizenship by operation of law through a U.S. citizen parent, either at birth (e.g., named Plaintiff Jose Jimenez Moreno) or while a minor through a parent's naturalization (e.g., proposed intervenor Sergey Mayorov). [Ex. S, at DHS002751 ("[T]he INA and various related statutes codify numerous avenues by which an individual may derive, acquire, or otherwise obtain U.S. citizenship other than through birth in the United States"); Ex. U, Defs.' Resp. to Pls.' Second Set of Req. for Admission, Req. No. 52; *see, e.g.,* 8 U.S.C. § 1401 (a)(7)(1976) (statute under which named Plaintiff Jose Jimenez Moreno acquired U.S. citizenship at birth) and Ex. GG; 8 U.S.C. § 1431 (statute through which proposed intervenor Sergey Mayorov derived U.S. citizenship through his mother's naturalization) and *Mayorov v. United States*, Case No. 13-5249, Defs.' Answer, Dkt. No. 8, ¶¶ 7, 10 (N.D. Ill.).]

29. Moreover, ICE concedes that the criminal grounds for removability are "complex" [Ex. J, at DHS002683; *see* Ex. E, P. Miller Dep. 15:24-16:20], and yet it does not require its agents to seek independent confirmation that an LPR or other lawful immigrant's conviction makes her removable. [Ex. E, P. Miller Dep. 48:21- 49:1, 58:16-20; Ex. L, J. Antia Dep. 107:4-10, 140:9-14, 166:24-167:4, 170:2-12 (immigration detainer was issued against Plaintiff Lopez on mistaken belief that conviction for "misprision of a felony" was a controlled substance offense).]

30. The gaps in ICE's policies and practices regarding its investigations to establish probable of cause of alienage and removability are substantial given the number of foreign-born individuals who are either U.S. citizens or otherwise lawfully in the United States.

31. Over 17 million U.S. citizens of foreign birth are currently living in the United States (44% of the U.S. foreign-born population). *See Morales v. Chadbourne*, 996 F. Supp. 2d

19, 35 (D.R.I. 2014); U.S. Census Bureau, The Foreign Born Population in the United States: 2010 (issued May 2012), *available at* http://www.census.gov/prod/2012pubs/acs-19.pdf) (last visited Dec. 1, 2015)

32.     Of the population of U.S. citizens of foreign birth, DHS estimates that since 1980 over 1.4 million minors with LPR status automatically derived U.S. citizenship through a parent's naturalization. [Ex. V.] Additionally, the U.S. Census Bureau estimates that as of 2013, an additional 2,584,452 U.S. citizens living in the United States were born in a foreign country, but acquired U.S. citizenship at birth through a U.S. citizen parent. [Ex. W.]

33.     Individuals who derive or acquire U.S. citizenship through a parent are citizens by operation of law, such that they are not required to file an application for a certificate of citizenship or passport. *See Matter of Fuentes-Martinez*, 21 I. & N. Dec. 893, 896 (BIA 1997) ("A child's acquisition of citizenship on a derivative basis occurs by operation of law and not by adjudication. No application is filed, no hearing is conducted, and no certificate is issued when such citizenship is acquired. The actual determination of derivative citizenship . . . may occur long after the fact in the context of a passport application . . . .").

34.     ICE's own data indicates that between FY2008 and FY2012, at least 834 U.S. citizens have been subjected to immigration detainers, and there are indications that the number of U.S. citizens subject to detainers could be significantly higher. [Ex. X.] ICE's Rule 30(b)(6) witness also conceded that ICE has consistently issued immigration detainers against non-removable LPRs. [Ex. E, P. Miller Dep. 49:11-51:15.]

35.     As of January 2013, there were roughly 13.1 million LPRs living in the United States [Ex. V], and another 61 million individuals in another lawful status. [Ex. Y.]

36.     In its June 2015 detainer training materials and the I-247X training materials, ICE includes a 10-point bullet list of "red flags"—such as information about a subject's biological or adoptive parent's U.S. citizenship—that may indicate that the subject may be a U.S. citizen and thus warranting further review and investigation to establish probable cause of alienage and removability. [*See* J, at DHS002684-2685; Ex. II, at DHS002797-2798.]

37.     Still, ICE has no policy or practice requiring or advising its agents to gather and analyze the information that ICE concedes are "red flags" requiring further review and investigation to establish probable cause of alienage and removability. [*See* Ex. J, at DHS0002689-2700 (hypotheticals).][1]

38.     On November 10, 2015, ICE issued superseding guidance for "Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE"—in which ICE includes a new detainer policy for how ICE agents are to conduct a further investigation when the "red flags" of possible U.S. citizenship are discovered, defined as "Indicia of Potential U.S. citizenship" in the new guidance (hereinafter "Nov. 10, 2015 USC guidance"). [Ex. S; *compare* Ex. S, at DHS002752 *with* Ex. J, at DHS002684-2685 *and* Ex. II, at DHS002797-2798.]

39.     According to the November 10, 2015 USC guidance, it is only when an "Indicia of Potential U.S. Citizenship" is uncovered that ICE agents are advised to conduct a more thorough investigation that "may include a review of the A-file and other pertinent documents, an interview of the individual, searches of vital records databases, interviews of family

---

[1] Notably, "Hypothetical # 3" (DHS002693-2694) is based on an actual damages lawsuit brought by another U.S. citizen unlawfully subject to an immigration detainer. *See Makowski v. United States*, Case No. 12-cv-5265, Am. Compl., Dkt. No. 45 (N.D. Ill. filed July 3, 2012) (Gottschall, J.).  Mr. Makowski, in fact, obtained U.S. citizen at the age of one through his adoptive parents, but the agency never updated its electronic records to reflect his citizenship. *Id.*  Mr. Makowski was unlawfully subjected to immigration detainers twice, the second one resulting in him serving seventy days in prison. *Id.*

members and other individuals in possession of relevant information, and other appropriate investigation." [Ex. S, at DHS002754.]

40.     However, unless an ICE agent conducts an interview of the subject individual and/or other relevant individuals, ICE's standard detainer investigative practices—relying on a fingerprint or manual search of the subject in four DHS databases (CIS, CLAIMS, TECS, ENFORCE) [*see, e.g.,* Ex. K, at DHS00048, DHS00060 (checklist showing the standard four DHS databases reviewed); Ex. F, K. Kauffman Dep. 57:5-59:12, 74:5-75:15; 157:23-158:13]— would never uncover sufficient evidence to satisfy at least 7 out of the 10 "Indicia of Potential U.S. Citizenship" to trigger the more thorough investigation. [*See* Ex. S, at DHS 002752.]

41.     The 10 "Indicia of Potential U.S. Citizenship" from the Nov. 10, 2015 USC guidance with the information in bold that cannot be found based on a fingerprint or manual search of a targeted individual in the four DHS databases are:

  i.   **An immigration judge, legal representative, or purported family member indicates to ICE that the individual is or may be a U.S. citizen**;

 ii.   There is some information suggesting that the individual was born in the United States, as defined in INA § 101(a)(38), or a past or present U.S. territorial possession such as the Panama Canal Zone;

iii.   **There is some information suggesting that one or more of the individual's parents, grandparents, or foreign-born siblings are or were U.S. citizens, particularly when the timeline for the physical presence of these family members in the United States is incomplete**;

 iv.   The individual entered the United States as a lawful permanent resident when he or she was a minor and **has at least one parent who is a U.S. citizen**;

  v.   There is some information suggesting that the individual was adopted by a U.S. citizen;

 vi.   An application for naturalization, a U.S. passport, or a certificate of citizenship has been filed by the individual or on the individual's behalf and remains pending;

vii. **The individual has served in the U.S. Armed Forces**;

viii. **The individual equivocates (or is unsure) about his or her date and/or place of birth and appears to be under the age of 21 years old**;

ix. **The individual** has been present in the United States since before his or her fifth birthday and **does not know who his or her parents are**; and/or

x. **The individual was born abroad out of wedlock and there is information suggesting that one or both of his or her parents may have been U.S. citizens, but the initially available information is inconclusive regarding physical and legal custody and/ or legitimation**.

[*See* Ex. S, at DHS 002752.]

42.     A search of a targeted individual in the four DHS databases will reveal at most the first names of the individual's parents. [*See* Ex. F, K. Kauffman Dep. 153:11-155:7.]

43.     ICE has no policy regarding when officers should or must interview an individual or parents before issuing a detainer. [Ex. E, P. Miller Dep. 58:21-59:13; Ex. F, K. Kauffman Dep. 58:7-14; Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy); Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (training materials on using the I-247X form as a detainer).]

44.     In many circumstances, as a matter of practice, ICE agents simply do not conduct interviews before issuing detainers. [Ex. F, K. Kauffman Dep. 33:12-18, 34:15-18, 58:7-14, 141:25-142:1.] In other circumstances, ICE agents are unable to conduct interviews in LEA custody. [Ex. L, J. Antia Dep. 120:2-12; Ex. S, at DHS002755 ("subparagraph g").]

45.     ICE agents usually do not review an individual or his parents' immigration files (a/k/a Alien file or A-file) before issuing a detainer. [Ex. F, K. Kauffman Dep. 75:2-15; Ex. L, J. Antia Dep. 141:15-144:17 (showing Plaintiff Lopez's detainer was issued without review of her Alien file).]

46.     ICE concedes that the completeness and accuracy of DHS's database information becomes increasingly unreliable from the 1990s going backward. [Ex. F, K. Kauffman Dep. 150:2-152:4; *see* Ex. Z, DHS, Privacy Impact Assessment, "Central Index System," at 10 (June 22, 2007) ("All information in the system that is shared in DHS serves as an initial screening process to provide a quick look at a person's basic information . . . to determine if there is a need to request the physical file").]

**B.  Statutory Requirements for Warrantless Arrests**

47.     As part of the process of issuing immigration detainers, ICE's policies and practices do not require any individualized determination that the class member is "likely to escape before a warrant can be obtained for his arrest." [Ex. E, P. Miller Dep. 59:18-60:24; Ex. F, K. Kauffman Dep. 66:2-18; Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy), DHS000112-114; Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (training materials on using the I-247X form as a detainer).]

48.     As part of the process of issuing immigration detainers, ICE agents do not make any determination at all that the class member is "likely to escape before a warrant can be obtained for his arrest." [Ex. E, P. Miller Dep. 59:18-60:24; Ex. F, K. Kauffman Dep. 66:2-18;

Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer

policy (superseding in part August 2, 2010 policy), DHS000112-114; Ex. K, Secure

Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682

(training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June

10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (training materials on using

the I-247X form as a detainer).]

49.     Nevertheless, the legacy Immigration and Naturalization Service ["INS"]

manual on arrests, searches, and seizures advised with regard to detainers that "[s]ince it is

difficult to establish that these aliens are likely to abscond before a warrant can be obtained to

support an arrest without warrant under section 287(a)(2) of the Act [8 U.S.C. § 1357(a)(2)], a

warrant of arrest should be issued and served upon the alien." [*See* Ex. Q, at DHS000098.]

50.     Upon having a class member arrested on a detainer, ICE does not follow any

practice or policy of having the class member brought "without unnecessary delay" before an

immigration judge.  [8 U.S.C. § 1357(a)(2); Ex. E, P. Miller Dep. 71:4-7; Ex. F, K. Kauffman

Dep. 114:13-22; Ex. L, J. Antia Dep. 166:17-167:4; Ex. M, C. Schilling Dep. 141:3-24.]

51.     Upon having a class member arrested on a detainer, ICE does not follow any

practice or policy of bringing the class member before an immigration judge within 48 hours

after the arrest.  [8 U.S.C. § 1357(a)(2); Ex. E, P. Miller Dep. 71:4-7; Ex. F, K. Kauffman Dep.

114:13-22; Ex. L, J. Antia Dep. 166:17-167:4; Ex. M, C. Schilling Dep. 141:3-24.]

52.     Rather, ICE requests that the LEA arrest and detain the class member for up to a

full 48 hours beyond when he should have been released so that ICE can assume custody of the

individual, without any contemplation of promptly bringing the class member before an

18

immigration judge. [*See* Memo. Op. & Order on Class Certification, Dkt. # 146, at 3; Ex. D, at DHS 0002702; Ex. N, at DHS002650; Ex. HH.]

**C.  ICE's Policies & Practices Regarding Service and Opportunity to Challenge**

53.     ICE's policies and practices regarding service of a detainer on a class member and an opportunity to challenge the detainer have evolved somewhat over the course of this class action but have not materially changed.

54.     ICE agents typically do not serve a copy of a detainer on a class member, instead usually faxing or delivering it  to the LEA where the class member is in custody. [Ex. F, K. Kauffman Dep. 86:15-18, 170:16-171:17; Ex. M, C. Schilling Dep. 48:14-19; Ex. AA, at DHS000232; Ex. BB.]

55.     Under the August 2010 detainer form, there was no requirement or provision contemplating that the detainee would receive a copy of the detainer and no mechanism to challenge the detainer.  [*See* Ex. G.]

56.     Under the December 2011 and December 2012 detainer forms, ICE requested but did not require that LEAs provide individuals with a copy of their detainers [Exs. H & I] or track whether this occurred. [Ex. C, at RFAs No. 4-6; Ex. E, P. Miller Dep. 129:16-130:22, 137:4-16; Ex. F, K. Kauffman Dep. 111:4-114:12.]

57.     Under the June 2015 I-247D and August 2015 I-247X detainers, ICE still requests but does not require that LEAs serve class members with copies of their detainers, and the request does not expressly include the addendum "Notice to Detainee" on page 2 and 3. [Ex. D; Ex. HH.]  ICE advises LEAs that its request to detain "only takes effect if you serve a copy of this form on the subject." [Ex. D; Ex. HH.]

58.     ICE has no written policy for tracking service of detainers or the consequences if an LEA detains a class member on a detainer without serving the class member with a copy. [*See generally* Exs. N, J, CC, and II.]

59.     Under the December 2011, December 2012, June 2015 I-247D, and August I-247X detainer forms, ICE developed a "Notice to Detainee" addendum to the detainer form, which includes (after a lengthy advisal) a telephone number by which individuals who claim to be U.S. citizens could "advise" DHS. [hereinafter "USC telephone number"].  [Exs. H, I, D, and HH.]  In practice, the "Notice to Detainee" (on pages 2 & 3 of the sample December 2011, December 2012, June 2015 I-247D and August I-247X detainers) is reduced down to one page when a detainer is issued.  [Ex. F, K. Kauffman Dep. 112:4-20.]

60.     Although the form purports to offer a telephone number for U.S. citizens, it does not describe any telephone number available to individuals who might have other claims against a detainer, such as named Plaintiff Maria Jose Lopez, who is a nonremovable LPR. [*See* Exs. H, I, D, and HH; Ex. E, P. Miller Dep. 137:17-138:4.]

61.     There is no ICE policy that requires the subjects of detainers to be informed of the telephone number for U.S. citizens. [Ex. E, P. Miller Dep. 141:10-13.]  In order to contact the U.S citizen telephone number, the subject must either have access to a telephone free of charge through the LEA or have sufficient funds to make calls. [*See generally* Ex. DD.]

62.     Through the telephone number, individuals speak with DHS contractors, not with any DHS official with authority to cancel a detainer or with training in immigration and citizenship law. [Ex. E, P. Miller Dep. 136:10-24, 142:24-143:18; *see generally* Ex. DD.]

63.     After the DHS contractor conducts a short interview of the caller, DHS's written policy instructs the contractor: "If the caller responds positively to any of the questions or,

20

based on the information the caller provides, **you believe they have a viable claim** to U.S. Citizenship, immediately refer the call to an [ICE Agent] to validate the claim." [Ex. DD, at DHS000133 (emphasis added).]

64.     DHS policy does not instruct the ICE agent to interview the caller, request the individual or his parents' Alien files, or conduct any other further interviews or investigations into vital records. [Ex. DD, at DHS000133.] Instead, DHS instructs the ICE agent to repeat the same database checks that supposedly occurred prior to issuing the detainer. [*Id.*]  If the database records are inconclusive, the ICE agent is simply to transfer the claim of citizenship to the Field Office that issued the detainer. [*Id..*]

65.     DHS has no policy of notifying individuals of the results of its inquiries into their claims of U.S. citizenship. [Ex. E, P. Miller Dep. 158:2-14.]

66.     DHS never involves an immigration judge or other detached and neutral judicial officers in any detainer challenge placed through the telephone number. [*See generally* Ex. DD.]

## IV.     Named Plaintiffs and Their Detainers

67.     Although he was born in Mexico, Plaintiff Moreno acquired U.S. citizenship at birth from his U.S. citizen father. [*See* Exs. A & GG.]

68.     Plaintiff Moreno always believed that he was a U.S. citizen but did not know how to prove it to government officials. [Ex. EE, J. Moreno Dep. 12:16-14:3, 40:19-41:10, 42:2-44:22, 48:13-49:16, 80:15-81:24.]

69.     Prior to his arrest, Plaintiff Moreno had hired an immigration attorney and gathered substantial evidence of his U.S. citizenship. [*See* Ex. EE, J. Moreno Dep. 40:19-41:10, 42:2-44:22 48:13-49:16, 52:5-20.]

70.     On March 22, 2011, the morning after his arrest by the LEA, ICE faxed an immigration detainer to the Winnebago County Sheriff requesting that the LEA arrest Plaintiff Moreno pursuant to the detainer once the LEA's detention authority expired. [Ex. AA.]

71.     The detainer against Plaintiff Moreno was issued pursuant to ICE's standard detainer policies and practices. [*See supra* ¶¶ 14-66; Ex. M, C. Schilling 139:24- 141:23; 151:3-152:21; Ex. AA.]

72.     Within days of Plaintiff Moreno's filing the present lawsuit, ICE cancelled his detainer due to the substantial evidence of his U.S. citizenship. [*See* Ex. JJ; Ex. F, K. Kauffman Dep. 188:1-14.]

73.     Plaintiff Moreno has subsequently obtained a certificate of U.S. citizenship that demonstrated that he was a citizen from the date of his birth on September 15, 1976. [Ex. A.]

74.     Plaintiff Lopez entered the United States as a Lawful Permanent Resident on August 5, 1997, at the age of 15 years old. [*See* Ex. KK.]

75.     Plaintiff Lopez is the mother and primary caregiver to three U.S. citizen children. [Ex. FF, M. Lopez Dep. 29:4-16, 55:14-56:7.]

76.     On November 10, 2010, Plaintiff Lopez pled guilty to one count of "misprision of felony," which Plaintiff Lopez explained at her deposition means "giv[ing] false information to law enforcement." [Ex. LL; Ex. FF, M. Lopez Dep. 20:15-21:9; 18 U.S.C. § 4.]

77.     At no time was Plaintiff Lopez removable from the United States based on her conviction for "misprision of felony" or any other reason. [*See* Defs.' Answer to Am. Compl., Dkt. # 82, ¶14; Ex. C, at Request No. 9; Defs.' Mem. in Opp. to Class Certification, Dkt. # 109, at 3.]

78.     On February 1, 2011, ICE issued an immigration detainer against Plaintiff Lopez, requesting that the LEA arrest Plaintiff Lopez pursuant to the detainer once the LEA's detention authority expired. [Defs.' Answer to Am. Compl., Dkt. # 82, ¶14; Ex. BB.]

79.     The detainer against Plaintiff Lopez was issued pursuant to ICE's standard detainer policies and practices. [*See supra* ¶¶ 14-66; Ex. L, J. Antia 164:7-167:4, 169:20-170:12, 201:9- 202:21; Ex. BB; Ex. LL.]

80.     In issuing the detainer, ICE agent Antia mistakenly believed that "misprision of felony" was a drug offense.   [Ex. L, J. Antia 201:9- 202:21.] On August 12, 2011, the day after Plaintiff Lopez filed the present lawsuit, ICE cancelled her detainer. [Ex. MM.]

**EXHIBIT INDEX FOR PLAINTIFFS' STATEMENT OF FACTS**

| Document | Exhibit |
|---|---|
| Certificate of U.S. Citizenship—Jose Jimenez Moreno | A |
| Approved LPR application —Maria Jose Lopez | B |
| Defs.' Resp. to Pl's First Set of RFAs | C |
| June 2015 I-247D immigration detainer form | D |
| Deposition Transcript  of 30(b)(6) deponent Phillip Miller (June 6, 2013) | E |
| Deposition Transcript  of 30(b)(6) deponent Kerry Kauffman (June 4, 2013) | F |
| August 2010 immigration detainer form | G |
| December 2011 immigration detainer form | H |
| December 2012 immigration detainer form | I |
| June 2015 Priority Enforcement Program (PEP) Training PowerPoint Slideshow | J |
| Secure Communities Response Center Standard Operating Procedures | K |
| Deposition Transcript of ICE Agent Jessica Antia (October 23, 2013) | L |
| Deposition Transcript of ICE Agent Carly Schilling (October 24, 2013) | M |
| DHS directive on Implementation of  Immigration Enforcement Priorities (June 10, 2015) | N |
| ICE Detainer Policy (August 2, 2010) | O |
| ICE Detainer Policy (December 21, 2012) | P |
| INS Manual, M-69, The Law of Arrest, Search, and Seizure for Immigration Officers (January 1993) | Q |
| Criminal Alien Program Handbook (May 14, 2013) | R |
| Investigating the Potential U.S. citizenship of Individuals Encountered by ICE (ICE Policy No. 16001.1, Nov. 10, 2015) | S |
| Superseding Guidance on Reporting and Investigation of Claims to United States Citizenship (ICE, July 18, 2008) | T |
| Defs.' Resp. to Pls.' Second Set of RFAs | U |
| DHS, "Estimates of the Lawful Permanent Resident Population in the United States: January 2013" (published September 2014) | V |
| U.S. Census Bureau, Fact Finder, "Place of Birth by Nativity and Citizenship Status," Report B05002, 2009-2013 American Community Survey 5-Year Estimates (Last visited Nov. 19, 2015) | W |

| | |
|---|---|
| Transactional Record Access Clearinghouse (TRAC), "ICE Detainers Placed on U.S. Citizens and Legal Permanent Residents" (Feb. 20, 2013); Warren Institute, "Secure Communities by the Numbers" (Oct. 2011); *Morales v. Chadbourne*, Case No. 12-301, Dkt. #177, ¶ 122 (D. R.I. 2012) | X |
| DHS, "NonImmigrant Admissions to the United States: 2013" (published July 2014) | Y |
| DHS, Privacy Impact Assessment Report, "Central Index System" (June 22, 2007) | Z |
| Jose Jimenez Moreno Detainer & Fax Report Sheet | AA |
| Maria Jose Lopez Faxed Detainer | BB |
| Email from Phillip Miller, Asst. Director for Field Operations, regarding Priority Enforcement Program Outreach and Communication (June 16, 2015) | CC |
| Law Enforcement Support Center (LESC), Standard Operating Procedures for U.S. Citizen Telephone Number (Jan. 12, 2012) | DD |
| Deposition Transcript of Jose Jimenez Moreno (June 19, 2013) | EE |
| Deposition Transcript of Maria Jose Lopez  (June 17, 2013) | FF |
| Cover Letter to Jose Jimenez Moreno's N-600 Application | GG |
| August 2015 I-247X immigration detainer form | HH |
| November 2015 ICE Training PowerPoint Slideshow, "Facilitating the Transference of Custody of Priority Aliens from State and Local Custodial Institutions" | II |
| Cancelled Detainer & Evidence of U.S. citizenship for Jose Jimenez Moreno | JJ |
| Central Index System Screenshot of entry for Maria Jose Lopez | KK |
| Screenshot from ICE ENFORCE database entry for Maria Jose Lopez | LL |
| Cancelled Detainer for Maria Jose Lopez | MM |

Dated:  December 11, 2015              Respectfully submitted,

**By:**    /s/  Linda T. Coberly          

| | |
|---|---|
| Mark Fleming | Linda T. Coberly |
| Charles Roth | Joanna Travalini |
| Claudia Beatrice Valenzuela Rivas | Lee B. Muench |
| NATIONAL IMMIGRANT JUSTICE CENTER | WINSTON & STRAWN LLP |
| 208 South LaSalle Street, Suite 1300 | 35 West Wacker Drive |
| Chicago, Illinois 60604 | Chicago, Illinois 60601 |
| Telephone: (312) 660-1370 | Telephone: (312) 558-5600 |
| Facsimile: (312) 660-1505 | Facsimile:  (312) 558-5700 |
| mfleming@heartlandalliance.org | lcoberly@winston.com |
| croth@heartlandalliance.org | jtravalini@winston.com |
| cvalenzuela@heartlandalliance.org | lmuench@winston.com |
| | |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically and served by operation of the Court's electronic filing system, on December 11, 2015, to the parties below. Parties may access this filing through the Court's system.

_/s/ Linda T. Coberly_