**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE JIMENEZ MORENO and MARIA | ) | |
| JOSE LOPEZ, | ) | |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | No. 1:11-cv-05452 |
| vs. | ) | |
| | ) | Judge John Z. Lee |
| JEH JOHNSON,  et al., | ) | |
| in their official capacities, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' LOCAL RULE 56.1(b) STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, Defendants submit this response to Plaintiffs'
statement of material facts as to which there is no genuine issue, in support of their
motion for summary judgment.

### I.      Parties and Procedural Matters

1.      Plaintiff Jose Jimenez Moreno ("Moreno") is a U.S. citizen from birth.
At all times relevant to this litigation, he was not—and is not today—removable from
the United States.   [*See* Defs.' Answer to Am. Compl., Dkt. # 82, ¶ 13; Ex. A,
Certificate of U.S. Citizenship for Moreno; Ex. C, Defs.' Resp. to Pls.' First Set of
Requests for Admission ("RFA"), Req. No. 8 & 9; Defs.' Mem. in Opp. to Class
Certification, Dkt. # 109, at 3.]

**Defendants' Response:**

Defendants do not dispute this.

2.     Plaintiff Maria Jose Lopez has been a Lawful Permanent Resident ("LPR") since 1997.  At all times relevant to this litigation, she was not—and is not today—removable from the United States.  [*See* Defs.' Answer to Am. Compl., Dkt. # 82, ¶ 14; Ex. B, LPR Application for Lopez (approved Aug. 5, 1997); Ex. C, Defs.' Resp. to Pls.' RFA, Req. Nos. 8 & 9; Defs.' Mem. in Opp. to Class Certification, Dkt. # 109, at 3.]

**Defendants' Response:**

Defendants do not dispute that Plaintiff Lopez was a lawful permanent resident and had not been convicted of a removable offense at the time ICE issued a detainer against her.

3.     Plaintiffs Moreno and Lopez represent the following certified class:

> All current and future persons against whom Immigration and Customs Enforcement (ICE) has issued an immigration detainer [from] the Chicago Area of Responsibility where: (1) ICE has instructed the law enforcement agency (LEA) to continue to detain the individual after the LEA's authority has expired; (2) where ICE has not served a Notice to Appear or other charging documents, has not served a warrant of arrest for removal proceedings, and/or has not obtained an order of deportation or removal with respect to the individual; and (3) where the LEA cooperates with ICE in complying with detainers.

[Mem. Op. & Order on Class Certification, Dkt. # 146, at 24.]

**Defendants' Response:**

Defendants do not dispute this fact.

4.     Defendants DHS Secretary Jeh Johnson (successor to Janet Napolitano), ICE Director Sarah Saldaña (successor to John Morton ), ICE Chicago Field Office Director Ricardo Wong, and ICE Law Enforcement Support Center (LESC) Director David Palmatier (and his successors) (collectively "Defendants" or "ICE"), in their official capacities, are responsible for policies and practices regarding the issuance of immigration

detainers against class members. [Defs.' Answer to Am. Compl., Dkt. # 82, ¶ 15-18, Mem.

Op. & Order on Class Certification, Dkt. # 146, at 14-18.]

**Defendants' Response:**

Defendants do not dispute this fact.

5.     By definition, in light of the scope of the certified class, a substantial part

of the events and omissions giving rise to Plaintiffs' claims occurred in this district, and

the custodian for purposes of class members' immigration detainers is located in the

district. [*See* Pls.' Am. Compl., Dkt # 78, ¶¶ 10-11.]

**Defendants' Response:**

Defendants do not dispute this fact.

## II.     ICE's Immigration Detainer Forms

6.     ICE issues immigration detainers (now Form I-247D or Form I-247X) to federal,

state, and local law enforcement agencies ("LEAs") to advise the LEA that ICE seeks custody of

an individual currently detained by the LEA. [8 C.F.R. § 287.7(a); Mem. Op. & Order on Cross

Mots. for J. on Pleadings, Dkt. # 144, at 8.]

**Defendants' Response:**

Defendants do not dispute this fact as to I-247D forms only. *See* Form I-247D

(Plaintiff Ex. D).  Defendants note that I-247X forms can serve as a request for

detention or request for notification of release.  *See* Form I-247X (Plaintiff Ex. HH).

7.     Since this litigation was filed, ICE has used five different detainer forms: the

August 2010 revision, the December 2011 revision, the December 2012 revision, the June 2015

Form I-247D, and the August 2015 Form I-247X. [Mem. Op. & Order on Class Certification,

Dkt. # 146, at 2-3; Pls.' Mem. in Support of Class Certification, Dkt. # 95, at Exs. A-C,

DHS000115-121; Ex. D; Ex. HH.] Despite the multiple revisions—and setting aside the two named Plaintiffs—ICE has not rescinded or replaced outstanding detainers issued using the previous forms. [*See* Ex. E, P. Miller Dep. 105: 4-16, 211:11-24 (designated by Defendants under Rule 30(b)(6)); Ex. F, K. Kauffman Dep. 52:1-53:19, 73:8-19 (also designated by Defendants under Rule 30(b)(6).] ICE views all outstanding detainers, irrespective of which detainer form was used, as continuing to be valid. [*Id.*]

**Defendants' Response:**

Defendants do not dispute the first sentence, but dispute the last two sentences. While Defendants do not dispute that ICE has not replaced all outstanding detainer issued on previous forms, Defendants dispute that ICE has not rescinded any outstanding detainers. *See* Cancelled Detainer for Plaintiff Moreno (Plaintiff Ex. JJ) and Plaintiff Lopez (Plaintiff Ex. MM). In addition, Defendants dispute the third sentence because new detainers are only effective if served on the subject. *See* PEP Fact Sheet, DHS 2565 ("Detainer form requires that LEA provide a copy to the individual subject to the detainer."); *see also* Form I-247D, DHS 2702 (Plaintiff Ex. D), and Form I-247X, DHS 2834 (Plaintiff Ex. HH) ("This request takes effect only if you serve a copy of this form on the subject").

8.      The first three versions of the detainer form contain two main sections: checkboxes at the top of the form that explain the basis for issuing the detainer, and checkboxes at the bottom of the form that request that the LEA take certain actions. [Mem. Op. & Order on Class Certification, Dkt. # 146, at 2-3.] The June 2015 I-247D and the August 2015 I-247X versions maintain the content of these two main sections and then include an additional section to explain why the subject of the detainer is an enforcement priority. [*See* Ex. D, at DHS002702; Ex. HH, at DHS002834.]

**Defendants' Response:**

Defendants dispute this fact. The forms have evolved significantly since August 2010 and now include information describing what type of probable cause evidence ICE has and what enforcement priority the subject falls into. *See* Aug 2010 I-247 – DHS 115 (Plaintiff Ex. G), Dec. 2011 I-247—DHS 116-118 (Plaintiff Ex. H), Dec. 2012 I-247—DHS 119-121 (Plaintiff Ex. I), I-247D – DHS 2702 (Plaintiff Ex. D), and I-247X—DHS 2834 (Plaintiff Ex. HH).

9.     Currently, ICE uses the June I-247D detainer form against individuals that it deems the highest enforcement priorities, while the August I-247X detainer form is used against individuals that ICE has designated as lower enforcement priorities. [*See* Ex. II, at DHS002770-2776, 2785-2787, 2791.] Individuals subject to the August I-247X detainer form are class members only if they are the subject of a detainer issued under Section B.2 of this form. [*See* Ex. HH, at DHS002834; Ex. II, at DHS002788-2790.]

**Defendants' Response:**

Defendants dispute the first sentence, as Form I-247D is used for aliens falling within Priority 1 (a), (c), (d), and (e) and Priority 2 (a) and (b) of DHS's civil enforcement priorities, and Form I-247X is used for all other priorities and aliens whose removal would serve an important federal interest. *See* DHS Sec. Johnson Memorandum "Secure Communities" (Nov. 20, 2014), DHS 2554, and Nov. 2015 ICE Training PowerPoint Slideshow (Plaintiff Ex. II), DHS 2785. Defendants also dispute the last sentence. See ECF No 199.

10.     Under the class definition—and regardless of the particular detainer form used— the class members are all necessarily individuals who are or will be subject to

detainers where ICE has not indicated that the detainer is supported by: (1) service of a Notice to Appear or other charging document; (2) service of a warrant of arrest; or (3) issuance of an order of deportation or removal. [Mem. Op. & Order on Class Certification, Dkt. # 146, at 11-14; Pls.' Mem. in Support of Class Certification, Dkt. # 95, Exs. A-C, DHS000115-121.] While DHS has changed the description of the checkboxes in the June 2015 I-247D and August I-247X versions, individuals who are or will be subject to detainers issued under those new forms would still be members of the class if such detainer is not supported by either a final order of removal or pending removal proceedings (i.e., service of a Notice to Appear and warrant of arrest). [Ex. D, at DHS002702; Ex. HH, at DHS002834; *see* 8 C.F.R. §§ 239.1(b), 236.1(b)(1) (warrant of arrest can be issued only after a Notice to Appear), 1239.1.]

**<u>Defendants' Response:</u>**

Defendants dispute this. *See* Motion to De-certify the class (ECF No. 199.).

11.     Depending on the particular form used, the detainer issued with respect to the class members will necessarily have been based on a checkbox indicating that ICE has either "initiated an investigation" (August 2010 and December 2011), "determined that there is a reason to believe the individual is an alien subject to removal from the United States" (December 2012), or concluded that "[p]robable cause exists that the subject is a removable alien." (June 2015 I-247D and August 2015 I-247X). [Ex. G; Ex. H, at DHS000116; Ex. I, at DHS000119; Ex. D, at DHS002702; Ex. HH, at DHS002834.]

**<u>Defendants' Response:</u>**

Defendants dispute this fact.  All ICE detainers are based on reason to believe

and/or probable cause the subject is a removable alien. *See* ICE Detainer Directive, Aug. 2010, Plaintiff Ex. O, DHS 36-38, ICE Detainer Policy, Dec. 2012, Plaintiff Ex. P, DHS 112-114, and the DHS Memo regarding Secure Communities, Nov. 2014, DHS 2553-2555; Declaration of Matthew Albence. (Defendants' Ex. F)

12. Class members who are subject to the June 2015 I-247D detainer or August 2015 I-247X detainer are further provided generic information implying investigative steps ICE may have undertaken to reach its assertion of "probable cause," namely:

- biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

- statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

[Ex. D, at DHS002702; Ex. HH, at DHS002834.]

**<u>Defendants' Response:</u>**

Defendants dispute this fact. Defendants' policies and procedures require probable cause that a person is a removable alien before a Form I-247D or Form I-247X can be issued. *See* DHS Memo regarding Secure Communities, Nov. 2014, DHS 2553-2555 and Implementing DHS Immigration Enforcement Priorities, Plaintiff Ex. N, DHS 2649.

13. All five versions of the detainer form request that the LEA hold the individual for up to 48 hours beyond the time when the individual is otherwise eligible for release from LEA custody—whether the individual has paid bail, been acquitted, received a dismissal of charges, or completed a prison sentence—so that DHS can assume physical custody of the individual.

[Mem. Op. & Order on Class Certification, Dkt. # 146, at 3; Ex. D, at DHS 0002702; Ex. HH, at

DHS002834.]

**Defendants' Response:**

Defendants do not dispute this.

### III. ICE's Detainer Policies and Practices

14.     Despite changes to the detainer form and changes to ICE's enforcement priorities over the years, ICE's policies and practices for investigating and issuing detainers against class members have remained uniform and unchanged as they relate to class members' legal claims. [Mem. Op. & Order on Class Certification, Dkt. # 146, at 16, 19; Ex. J, at DHS002665-67 (training materials describing the changes to the detainer process after June 2015 as involving only enforcement priorities); *compare* Ex. F, K. Kauffman Dep. 20:1-4,20:18-23, 29:19-30:12, 41:23-51:7, 57:24-59:12, 73:20-74:4 (testifying to standard detainer procedures that rely on biometric fingerprint identification if available, federal database records checks, limited circumstances when ICE agents might speak with a subject, and ICE agents' practice of issuing detainers without any judicial or other review) *and* Ex. K, at DHS000048 (Secure Communities standard operating procedures for issuing detainers dated Dec. 1, 2011) *and* Ex. E, P. Miller Dep. 31:4-21, 184:4-14  (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly) *and* Ex. L, J. Antia Dep. 30:21-42:8, 80:15-81:20, 166:17-23 (testifying to standard procedures in issuing a detainer, including biometric fingerprint identification if available, federal database records checks, circumstances when she may interview a subject, and ICE agents' practice of issuing detainers without any judicial or other review) *and* Ex. M, C. Schilling Dep. 25:6-26:10, 139:24-143:1 (same) *with* Ex. N, at DHS002649-2650 (DHS Directives, Instruction No: 044-01-001, "Implementing Department of Homeland Security Immigration Enforcement Priorities" (Issue Date: June 10,

2015) (instruction on investigating and issuing immigration detainers after June 2015, which

closely tracks the procedures testified to by ICE officials Kauffman, Antia, and Schilling and

does not supersede the written detainer policies from August 2, 2010 (Ex. O), Secure

Communities detainer procedures (Ex. K, at DHS000048), and written detainer policy dated Dec.

21, 2012 (Ex. P)) *and* Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June

2015 I-247D detainers, which tracks previous detainer procedures) *and* Ex. II, at DHS002788-

2790, 2793-2795 (training material on using the I-247X form as a detainer, which tracks the ICE

training on use of the June I-247D detainer form and previous detainer procedures).]

**Defendants' Response:**

Defendants do not dispute insofar as d there is no practical or legal difference between an

ICE officer establishing "reason to believe" versus establishing probable cause.  However,

Defendants dispute the portion regarding issuing detainers as the policy for issuing detainers has

changed significantly since 2010.

15.    ICE does not have a written policy explaining how an officer is required or

advised to conduct his investigation to determine whether to issue a detainer. [Ex. O, August 2,

2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in

part August 2, 2010 policy); Ex. K, Secure Communities detainer procedures, at DHS000048;

Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D

detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-

2790, 2793-2795 (August 2015 I-247X detainer training materials); Ex. E, P. Miller Dep. 31:4-

21, 184:4-14 (testifying that the only detainer policies that exist are those that are in writing, and

that the written policies apply uniformly), 56:20-64:8.]  ICE's only written policy and general

practice is to rely on biometric fingerprint checks (if available) and searches for the targeted

individual in four DHS databases (CIS, CLAIMS, TECS, ENFORCE). [*See, e.g.,* Ex. K, at DHS00048, DHS00060 (checklist showing the standard four DHS databases reviewed); Ex. F, K. Kaufmann Dep. 57:5-59:12, 74:5-75:15; 157:23-158:13.] ICE has no policy requiring officers to interview an individual or other relevant individuals before issuing a detainer. [Ex. E, P. Miller Dep. 58:21-59:13; Ex. F, K. Kauffman Dep. 58:7-14; Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy); Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (training materials on using the I-247X form as a detainer).]

**Defendants' Response:**

Defendants dispute the first two sentences. While ICE has general written ***procedures*** and training describing common investigative techniques the officers can use, such as which databases to check, how to fill out database entries, etc., s*ee* I-247X Training, Plaintiff Ex. II, DHS 2789 (describing what is needed to establish probable cause), CAP Handbook, Plaintiff Ex. R, DHS 2596, DHS Implementing Immigration Enforcement Policy, Plaintiff Ex. N, DHS 2649-2651, PEP Training Slideshow, Plaintiff Ex. J, DHS 2682; Chicago Secure Communities IRC SOP, Plaintiff Ex. K, DHS 48-49, there are no written policies listing all of the investigative methods an ICE officer may use due to the constant evolving national security threats and illegal activities that an ICE officer confronts while enforcing federal law. SDDO Kauffman also testified that ICE CAP officers will generally interview persons before issuing detainers. *See* Kauffman Depo, Plaintiff Ex. F, p.33:8-10 (stating that CAP officers generally interview the subject before issuing a detainer); Declaration of Matthew Albence. (Defendants' Ex. F.)

Defendants do not dispute the last sentence.

### A. **Determination of Probable Cause**

16.     ICE's detainer policy does not require its agents to support a determination to issue an immigration detainer with any statement, much less a sworn, particularized statement of probable cause as to why a class member is a noncitizen and removable. [*See* Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. K, at DHS000048; Ex. P; Ex. N, at DHS002649-2650; Ex. J, at DHS002670-2673, 2679-2682; Ex. II, at DHS002788-2790, 2793-2795; Ex. E, P. Miller Dep. 31:4-21, 184:4-14  (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly); Ex. F, K. Kauffman Dep. 49:21-50:20 (testifying that ICE agents do not need to explain why they issue a detainer but that there probably should be a written policy); Ex. M, C. Schilling Dep. 139:24-143:1 (testifying that neither before nor after the fact do ICE agents have to explain their basis for issuing a detainer); Ex. L, J. Antia Dep. 164:7-165:6, 166:24-167:4 (same).]

### **Defendants' Response:**

Defendants dispute this.  The new detainer forms require that ICE officers check boxes with the specific reasons the detainer is being issued and identifies their name on the detainer. *See* Form I-247D, Plaintiff Ex. D and Form I-247X, Plaintiff Ex. HH.  In addition, ICE officers are required to create entries in EAGLE/EARM (ERO databases) to issue detainers.  The entries include statements of probable cause evidence.  *See* DHS 2713.  SDDO Kauffman also testified that ICE officers use the Form I-213, the Enforce database, and Secure Communities Worksheets to capture the information the officer used to support their probable cause determination.  *See* Kauffman Depo, Plaintiff Ex. F, p. 40:2-23, and p. 43:22-24, 44:1-7.

17.     ICE agents do not follow any practice that requires supporting a determination to

issue an immigration detainer with a sworn, particularized statement of probable cause as to why

a class member is a noncitizen and removable. [*See* Ex. O, August 2, 2010 detainer policy

(partially superseded); Ex. K, at DHS000048; Ex. P; Ex. N, at DHS002649-2650; Ex. J, at

DHS002670-2673, 2679-2682; Ex. II, at DHS002788-2790, 2793-2795; Ex. E, P. Miller Dep.

31:4-21, 184:4-14  (testifying that the only detainer policies that exist are those that are in

writing, and that the written policies apply uniformly); Ex. F, K. Kauffman Dep. 49:21-50:20

(testifying that ICE agents do not need to explain why they issue a detainer but that there

probably should be a written policy); Ex. M, C. Schilling Dep. 139:24-143:1 (testifying that

neither before or after do ICE agents have to explain their basis for issuing a detainer); Ex. L, J.

Antia Dep. 164:7-165:6, 166:24-167:4 (same).]

### Defendants' Response:

Defendants do not dispute that there is no sworn statement of probable cause made at the

time the detainer is issued besides the detainer form itself.  Defendants dispute the contention

that there is no written justification for issuing a detainer.  *See* Chicago IRC SOP, Plaintiff Ex.

K, DHS 46 (describing duties of IEAs to include "write results/findings on SC Worksheets) and

DHS 50 (describing detainer packet created justifying detainer); CAP Handbook, Plaintiff Ex. R,

DHS 2596-2597 and 2622-2625 (describing procedures before issuing detainers); DHS

Implementing Immigration Enforcement Priorities Directive, Plaintiff Ex. N, DHS 2651 ("ICE

Officers and Agents are to document all encounters regardless of outcome."); ICE Detainer

Policy, Dec. 2012, Plaintiff Ex. P, DHS 114 (detainer form revised so that "receiving agency and

alien will know the specific basis for the detainer.").

18.    ICE's detainer policy does not require its agents to obtain a determination of

probable cause from a detached and neutral judicial officer, such as an immigration judge or

federal magistrate, either before seeking a class member's arrest on an immigration detainer (i.e.,

a valid warrant) or within 48 hours after a class member's arrest on an immigration detainer. [*See*

Ex. O, August 2, 2010 detainer policy (partially superseded); Exhibits: K, atDHS000048; Ex. P;

Ex. N, at DHS002649-2650; Ex. J, at DHS002670-2673, 2679-2682; Ex.II, at DHS002788-2790,

2793-2795; Ex. E, P. Miller Dep. 31:4-21, 184:4-14 (testifying that the only detainer policies that

exist are those that are in writing, and that the written policies apply uniformly); Ex. M, C.

Schilling Dep. 141:3- 23; Ex. L, J. Antia Dep. 80:21-81:3, 166:17- 167:4.]

**Defendants' Response:**

Defendants do not dispute this fact.

19.    ICE agents do not follow any practice of obtaining a determination of probable

cause from a detached and neutral judicial officer, such as an immigration judge or federal

magistrate, either before seeking a class member's arrest on an immigration detainer (i.e., a valid

warrant) or within 48 hours after a class member's arrest on an immigration detainer. [*See* Ex. O,

August 2, 2010 detainer policy (partially superseded); Ex. K, at DHS000048; Ex. P; Ex. N, at

DHS002649-2650; Ex. J, at DHS002670-2673, 2679-2682; Ex. II, at DHS002788-2790, 2793-

2795; Ex. E, P. Miller Dep. 31:4-21, 184:4-14 (testifying that the only detainer policies that exist

are those that are in writing, and that the written policies apply uniformly); Ex. M, C. Schilling

Dep. 141:3- 23; Ex. L, J. Antia Dep. 80:21-81:3, 166:17-167:4.]

**Defendants' Response:**

Defendants do not dispute this fact, as it pertains to civil immigration arrests only.

20.    In its June 2015 I-247D and I-247X detainer training materials, ICE asserts for the

first time that an immigration detainer is ***not*** an arrest, thus suggesting that the Fourth

Amendment does not apply to immigration detainers as a matter of law.  [Ex. J, at DHS 002681

("Although a detainer is not an arrest . . . as a matter of policy DHS requires probable cause. . . ."); Ex. II, at DHS002794 ("Although a detainer is not an arrest, as a matter of policy, DHS requires that prior to issuing a detainer, an immigration officer must possess probable cause that the subject is a removable alien.").] Previously, ICE took a different view on this issue, conceding that a detainer is an arrest that must be supported by probable cause. [Ex. Q, at DHS 000098 ("A detainer [that requests detention] is an arrest that must be supported by probable cause."); Ex. R, at DHS2588 (referring to detainers as proxy arrests).]

**Defendants' Response:**

Defendants dispute this. Detainers have always served multiple purposes only one of which is to request detention after the person is no longer subject to detention by the criminal justice agency. *See* 8 C.F.R. 287.7; ICE Detainer Directive (Aug. 2010), Plaintiff Ex. O, DHS 36; INS Law of Arrest, Search, and Seizure for Immigration Officers, M-69, Plaintiff Ex. Q, DHS 97-98.

21.     As described on the June 2015 I-247D detainer form [Ex. D, at DHS002702] and the August I-247X detainer form [Ex. HH, at DHS002834], and as reiterated in its June 2015 detainer policy and training materials, as well as the I-247X training materials, ICE's only policy with respect to issuing detainers is to provide generic guidance on the types of investigative steps an agent might undertake—including biometric fingerprint identification, federal database searches, and obtaining statements from the individual. [*See* Ex. N, at DHS002649-50; Ex. J, at DHS002682; Ex. II, at DHS2789.]

**Defendants' Response:**

Defendants dispute this. *See* response to Statement #15 regarding available written procedures and training.

22.      ICE concedes that "[a]s a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a USC [U.S. citizen]." [Ex. S; Ex. E, P. Miller Dep. 81:6-19 (testifying that this statement equally applies to immigration detainers).]

**Defendants' Response:**

Defendants do not dispute this, but note that it is not always clear whether a person is a U.S. citizen, if they were born in a foreign country, and there may exist probable cause of removability in a case in which the individual is ultimately determined to be a U.S. citizen.

23.      Likewise, ICE has previously conceded that it must have probable cause to believe that an individual is a noncitizen who does not have legal status or has a criminal conviction(s) that would make her removable, before it can request an LEA to arrest and detain the noncitizen on an immigration detainer. [8 U.S.C. § 1357(a)(2); Ex. T (citing *United States v. Cantu*, 519 F.2d 494 (7th Cir. 1975)).]

**Defendants' Response:**

Defendants dispute this.  *See* Plaintiffs Ex. T (Superseding Guidance on Reporting and Investigation of Claims to United States Citizenship (ICE, July 18, 2008) states "It is imperative that DRO officers establish probable cause to believe that an individual is an alien before making an arrest for a charge of removability."  It then cites 8 U.S.C. 1357 to state that courts have interpreted the term "reason to believe" to be the equivalent of probable cause.  It says nothing about issuing a detainer.  If anything, it supports the Defendants' position that the standard for issuing detainers between Aug. 2010 to Nov. 2014 was the equivalent of probable cause.  In any case, the guidance was superseded in Nov. 2008 and not applicable to the class or this case.

24.      In its June 2015 detainer training materials, ICE reiterates that "ICE cannot assert its civil immigration enforcement authority to arrest or detain a U.S. citizen (USC) or non-

removable alien" [Ex. J, at DHS 002677.]

**Defendants' Response:**

Defendants do not dispute this fact.

25.    ICE does not have any written policy instructing its agents on how to establish probable cause to believe that a targeted individual is a noncitizen and removable from the United States before issuing a detainer.  [Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy); Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (August 2015 I-247X detainer training materials); Ex. E, P. Miller Dep. 31:4-21, 184:4-14 (testifying that the only detainer policies that exist are those that are in writing, and that the written policies apply uniformly), 56:20-64:8.]

**Defendants' Response:**

Defendants dispute this fact.    New detainer forms (Plaintiff Ex. D and HH), PEP training materials (Plaintiff Ex. J and II), and Chicago IRC SOP (Plaintiff Ex. K) give further guidance on evidence needed to issue detainer.  *See* response to Paragraph 15 above.

26.    For example, ICE does not have a written policy or checklist requiring or advising agents to gather and analyze information showing place of birth; date of birth; whether the individual is an LPR and (if so) when that status was obtained; whether the individual is in another lawful status (asylee, visa holder); whether the individual has a criminal conviction that makes her removable; whether the individual naturalized to U.S. citizenship; whether the individual has a U.S. citizen parent and when the U.S. citizen parent obtained citizenship; or

whether the individual may have acquired or derived U.S. citizenship automatically through a parent's citizenship. [*Id.*; *See* Ex. F, K. Kauffman Dep. 57:5-21, 80:5-17, 92:15-93:12; Ex. E, P. Miller Dep. 48:21-49:1, 56:20-64:8.] An ICE agent might ask questions that elicit this information only after the individual has already been arrested on the detainer and brought into ICE's physical custody. [Ex. E, P. Miller Dep. 210:15-211:5, 213:5-7.]

**Defendants' Response:**

Defendants dispute this fact. Defendants' policy is for ICE officers to have probable cause before they issue detainers/requests for detention. *See* Sec. Johnson Secure Communities Memorandum, DHS 2554. Defendants' detainer policies do not specify the numerous ways to conduct immigration investigations due to the constantly evolving national security and criminal threats that ICE officers confront as part of their duties. Investigative techniques and methods are generally communicated to ICE officers through training. *See* Albence Declaration. (Def. Ex. F.) SDDO Kauffman also testified that this information is obtained by CAP officers who interview the subjects. *See* Kauffman Depo, Plaintiff Ex. F, p. 33:8-10 (CAP officers generally interview subjects before issuing detainer); Chicago Secure Communities IRC SOP, Plaintiff Ex. K, DHS 48-49 (databases checked contain the information listed in this paragraph). Also dispute that ICE officers only obtain this information after they have been transferred to ICE custody.

27.    ICE does not require its agents to investigate whether an individual's parent or parents are U.S. citizens—information necessary to determine whether the individual may have derived or acquired U.S. citizenship automatically through the parents' citizenship—before issuing a detainer. [Ex. N, at DHS002649-2650; Ex. E, P. Miller Dep. 57:25-58:4, 62:14-63:9 (discussing Dec. 21, 2012 detainer policy).]

**Defendants' Response:**

Defendants dispute this fact. ICE policy is "to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE." ICE Policy No. 16001.2, Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE, Plaintiff Ex. S, DHS 2751; Declaration of Matthew Albence. (Def. Ex F.)

28. ICE admits that there are numerous ways by which a foreign-born individual could acquire or derive citizenship by operation of law through a U.S. citizen parent, either at birth (e.g., named Plaintiff Jose Jimenez Moreno) or while a minor through a parent's naturalization (e.g., proposed intervenor Sergey Mayorov). [Ex. S, at DHS002751 ("[T]he INA and various related statutes codify numerous avenues by which an individual may derive, acquire, or otherwise obtain U.S. citizenship other than through birth in the United States"); Ex. U, Defs.' Resp. to Pls.' Second Set of Req. for Admission, Req. No. 52; *see, e.g.,* 8 U.S.C. § 1401 (a)(7)(1976) (statute under which named Plaintiff Jose Jimenez Moreno acquired U.S. citizenship at birth) and Ex. GG; 8 U.S.C. § 1431 (statute through which proposed intervenor Sergey Mayorov derived U.S. citizenship through his mother's naturalization) and *Mayorov v. United States*, Case No. 13-5249, Defs.' Answer, Dkt. No. 8, ¶¶ 7, 10 (N.D. Ill.).]

**<u>Defendants' Response:</u>**

Defendants do not dispute this fact.

29. Moreover, ICE concedes that the criminal grounds for removability are "complex" [Ex. J, at DHS002683; *see* Ex. E, P. Miller Dep. 15:24-16:20], and yet it does not require its agents to seek independent confirmation that an LPR or other lawful immigrant's conviction makes her removable. [Ex. E, P. Miller Dep. 48:21- 49:1, 58:16-20; Ex. L, J. Antia Dep. 107:4-10, 140:9-14, 166:24-167:4, 170:2-12 (immigration detainer was issued against Plaintiff Lopez on mistaken belief that conviction for "misprision of a felony" was a controlled

substance offense).]

**Defendants' Response:**

Defendants dispute this fact. *See* PEP Training (June 2015), Plaintiff Ex. J, DHS 2683 ("criminal grounds of inadmissibility and deportability are complex. If you are uncertain whether a conviction constitutes a removable offense, you should consult with your local Office of Chief Counsel prior to lodging a detainer."); Kauffmann Depo, Plaintiff Ex. F, p. 27:5-8 (supervisors generally need to approve detainers issued to LPRs).

30.     The gaps in ICE's policies and practices regarding its investigations to establish probable of cause of alienage and removability are substantial given the number of foreign- born individuals who are either U.S. citizens or otherwise lawfully in the United States.

**Defendants' Response:**

Defendants dispute this. This is not a factual statement, but a conclusory, argumentative statement.

31.     Over 17 million U.S. citizens of foreign birth are currently living in the United States (44% of the U.S. foreign-born population). *See Morales v. Chadbourne*, 996 F. Supp. 2d 19, 35 (D.R.I. 2014); U.S. Census Bureau, The Foreign Born Population in the United States: 2010 (issued May 2012), *available at* http://www.census.gov/prod/2012pubs/acs-19.pdf) (last visited Dec. 1, 2015).

**Defendants' Response:**

Defendants do not dispute this, but note that it is irrelevant to this litigation.

32.     Of the population of U.S. citizens of foreign birth, DHS estimates that since 1980 over 1.4 million minors with LPR status automatically derived U.S. citizenship through a parent's naturalization. [Ex. V.] Additionally, the U.S. Census Bureau estimates that as of 2013,

an additional 2,584,452 U.S. citizens living in the United States were born in a foreign country, but acquired U.S. citizenship at birth through a U.S. citizen parent.  [Ex. W.]

**<u>Defendants' Response:</u>**

Defendants do not dispute this, but note that it is irrelevant.

33.     Individuals who derive or acquire U.S. citizenship through a parent are citizens by operation of law, such that they are not required to file an application for a certificate of citizenship or passport. *See Matter of Fuentes-Martinez*, 21 I. & N. Dec. 893, 896 (BIA 1997) ("A child's acquisition of citizenship on a derivative basis occurs by operation of law and not by adjudication. No application is filed, no hearing is conducted, and no certificate is issued when such citizenship is acquired. The actual determination of derivative citizenship . . . may occur long after the fact in the context of a passport application . . . .").

**<u>Defendants' Response:</u>**

Defendants do not dispute this.

34.     ICE's own data indicates that between FY2008 and FY2012, at least 834 U.S. citizens have been subjected to immigration detainers, and there are indications that the number of U.S. citizens subject to detainers could be significantly higher.  [Ex. X.]  ICE's Rule 30(b)(6) witness also conceded that ICE has consistently issued immigration detainers against non-removable LPRs. [Ex. E, P. Miller Dep. 49:11-51:15.]

**<u>Defendants' Response:</u>**

Defendants dispute this fact.  ICE data indicates that the number of potential U.S. citizens issued detainers was significantly less during this time period when over one million detainers were issued by ICE.  In addition, the 2011 and 2012 Forms I-247 contained check boxes stating "Consider this request for a detainer operative only upon the subject's conviction."  *See* 2012

Form I-247, Plaintiff Ex. I, DHS 119, and 2011 Form I-247, Plaintiff Ex. H, DHS 116. This check box allowed ICE officers to inform a LEA that the ICE detainer would only become effective and/or valid upon the subject's conviction, as in the case where a lawful permanent resident was charged with a crime, which would make them removable from the United States. As such, because the effect of the check box was to make the detainee contingent upon conviction; absent a conviction there was no operative detainer against the individual. *See* Miller Deposition, Plaintiff Ex. E, p. 108-110 and p. 197, ln: 20-23 (stating that ICE officers were required to check box indicating detainer is contingent when issuing a detainer for a lawful permanent resident who was only charged with a removable offense).

35.    As of January 2013, there were roughly 13.1 million LPRs living in the United States [Ex. V], and another 61 million individuals in another lawful status. [Ex. Y.]

**Defendants' Response:**

Defendants do not dispute this, although it is irrelevant.

36.    In its June 2015 detainer training materials and the I-247X training materials, ICE includes a 10-point bullet list of "red flags"—such as information about a subject's biological or adoptive parent's U.S. citizenship—that may indicate that the subject may be a U.S. citizen and thus warranting further review and investigation to establish probable cause of alienage and removability. [*See* J, at DHS002684-2685; Ex. II, at DHS002797-2798.]

**Defendants' Response:**

Defendants do not dispute this.

37.    Still, ICE has no policy or practice requiring or advising its agents to gather and analyze the information that ICE concedes are "red flags" requiring further review and investigation to establish probable cause of alienage and removability. [*See* Ex. J, at

DHS0002689-2700 (hypotheticals).]

**Defendants' Response:**

Defendants Dispute this.  ICE policy is "to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE."  ICE Policy No. 16001.2, Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE, Plaintiff Ex. S, DHS 2751.

38.     On November 10, 2015, ICE issued superseding guidance for "Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE"—in which ICE includes a new detainer policy for how ICE agents are to conduct a further investigation when the "red flags" of possible U.S. citizenship are discovered, defined as "Indicia of Potential U.S. citizenship" in the new guidance (hereinafter "Nov. 10, 2015 USC guidance"). [Ex. S; *compare* Ex. S, at DHS002752 *with* Ex. J, at DHS002684-2685 *and* Ex. II, at DHS002797-2798.]

**Defendants' Response:**

Defendants do not dispute this.

39.     According to the November 10, 2015 USC guidance, it is only when an "Indicia of Potential U.S. Citizenship" is uncovered that ICE agents are advised to conduct a more thorough investigation that "may include a review of the A-file and other pertinent documents, an interview of the individual, searches of vital records databases, interviews of family members and other individuals in possession of relevant information, and other appropriate investigation." [Ex. S, at DHS002754.]

**Defendants' Response:**

Defendants Dispute this.  ICE policy is "to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE."  ICE Policy No.

16001.2, *Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE*,

Plaintiff Ex. S, DHS 2751.

40.     However, unless an ICE agent conducts an interview of the subject individual

and/or other relevant individuals, ICE's standard detainer investigative practices—relying on a

fingerprint or manual search of the subject in four DHS databases (CIS, CLAIMS, TECS,

ENFORCE) [*see, e.g.,* Ex. K, at DHS00048, DHS00060 (checklist showing the standard four

DHS databases reviewed); Ex. F, K. Kauffman Dep. 57:5-59:12, 74:5-75:15; 157:23-158:13]—

would never uncover sufficient evidence to satisfy at least 7 out of the 10 "Indicia of Potential

U.S. Citizenship" to trigger the more thorough investigation. [*See* Ex. S, at DHS 002752.]

**Defendants' Response:**

Defendants dispute this.  Most indicia can be obtained through database searches; Decl of

Matthew Albence.  (Def. Ex. F)

41.     The 10 "Indicia of Potential U.S. Citizenship" from the Nov. 10, 2015 USC

guidance with the information in bold that cannot be found based on a fingerprint or manual

search of a targeted individual in the four DHS databases are:

   i.   An immigration judge, legal representative, or purported family member indicates to
        ICE that the individual is or may be a U.S. citizen;

  ii.   There is some information suggesting that the individual was born in the United
        States, as defined in INA § 101(a)(38), or a past or present U.S. territorial possession
        such as the Panama Canal Zone;

 iii.   There is some information suggesting that one or more of the individual's parents,
        grandparents, or foreign-born siblings are or were U.S. citizens, particularly when
        the timeline for the physical presence of these family members in the United States
        is incomplete;

  iv.   The individual entered the United States as a lawful permanent resident when he or
        she was a minor and has at least one parent who is a U.S. citizen;

   v.   There is some information suggesting that the individual was adopted by a U.S.
        citizen;

vi.   An application for naturalization, a U.S. passport, or a certificate of citizenship has been filed by the individual or on the individual's behalf and remains pending;

vii.  The individual has served in the U.S. Armed Forces;

viii. The individual equivocates (or is unsure) about his or her date and/or place of birth and appears to be under the age of 21 years old;

ix.   The individual has been present in the United States since before his or her fifth birthday and does not know who his or her parents are; and/or

x.    The individual was born abroad out of wedlock and there is information suggesting that one or both of his or her parents may have been U.S. citizens, but the initially available information is inconclusive regarding physical and legal custody and/ or legitimation.

[*See* Ex. S, at DHS 002752.]

**Defendants' Response:**

Defendants dispute this.  Most indicia can be obtained through database searches.

42.    A search of a targeted individual in the four DHS databases will reveal at most the first names of the individual's parents. [*See* Ex. F, K. Kauffman Dep. 153:11-155:7.]

**Defendants' Response:**

Defendants dispute this.  It mischaracterizes Kauffman deposition testimony.  Last name of the child is generally the same as the last name of the parents, so only first name shown on CIS page for child.  ICE officers can conduct further searches within CIS and EARM/EAGLE for parents' information. *See* Pl. Ex. F, K. Kauffman Dep. 153:11-155:7.]

43.    ICE has no policy regarding when officers should or must interview an individual or parents before issuing a detainer. [Ex. E, P. Miller Dep. 58:21-59:13; Ex. F, K. Kauffman Dep. 58:7-14; Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy); Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing

June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II,

at DHS002788-2790, 2793-2795 (training materials on using the I-247X form as a detainer).]

**Defendants' Response:**

Defendants do not dispute that ICE has no written **policy** requiring officers to interview

an individual or parents before issuing a detainer. ICE has general written **procedures** and

training describing common investigative techniques the officers can use, such as which

databases to check, how to fill out database entries, etc., s*ee* I-247X Training, Plaintiff Ex. II,

DHS 2789 (describing what is needed to establish probable cause), CAP Handbook, Plaintiff Ex.

R, DHS 2596, DHS Implementing Immigration Enforcement Policy, Plaintiff Ex. N, DHS 2649-

2651, PEP Training Slideshow, Plaintiff Ex. J, DHS 2682; Chicago Secure Communities IRC

SOP, Plaintiff Ex. K, DHS 48-49, there are no written policies listing all of the investigative

methods an ICE officer may use due to the constant evolving national security threats and illegal

activities that an ICE officer confronts while enforcing federal law. SDDO Kauffman also

testified that ICE CAP officers will generally interview persons before issuing detainers. *See*

Kauffman Depo, Plaintiff Ex. F, p.33:8-10 (stating that CAP officers generally interview the

subject before issuing a detainer) *see also* Stateville Monthly Stats showing number of

interviews conducted, DHS 183-220. SDDO Kauffman also testified that Secure Communities

ICE officers may also conduct interviews. *See* Kauffman Depo, Plaintiff Ex. F, p. 45:12-16.

44. In many circumstances, as a matter of practice, ICE agents simply do not conduct

interviews before issuing detainers. [Ex. F, K. Kauffman Dep. 33:12-18, 34:15-18, 58:7-14,

141:25-142:1.] In other circumstances, ICE agents are unable to conduct interviews in LEA

custody. [Ex. L, J. Antia Dep. 120:2-12; Ex. S, at DHS002755 ("subparagraph g").]

**Defendants' Response:**

Defendants dispute this. SDDO Kauffman testified that CAP officers located in jails routinely interviewed subjects before issuing detainers. *See* Kauffman Depo, Plaintiff Ex. F, p. 33:8-10. SDDO Kauffman also testified that while interviews are not routine for IRC detainers because those are mostly based on biometric matches, IRC officers may interview the subjects. *See* Kauffman Depo, Plaintiff Ex. F, p. 45:12-16 and 58:9-14.

45.     ICE agents usually do not review an individual or his parents' immigration files (a/k/a Alien file or A-file) before issuing a detainer. [Ex. F, K. Kauffman Dep. 75:2-15; Ex. L, J. Antia Dep. 141:15-144:17 (showing Plaintiff Lopez's detainer was issued without review of her Alien file).]

**Defendants' Response:**

Defendants do not dispute this.

46.     ICE concedes that the completeness and accuracy of DHS's database information becomes increasingly unreliable from the 1990s going backward. [Ex. F, K. Kauffman Dep. 150:2-152:4; *see* Ex. Z, DHS, Privacy Impact Assessment, "Central Index System," at 10 (June 22, 2007) ("All information in the system that is shared in DHS serves as an initial screening process to provide a quick look at a person's basic information . . . to determine if there is a need to request the physical file").]

**Defendants' Response:**

Defendants dispute this. It mischaracterizes SDDO Kauffman's testimony. He stated "For the most part the records are kept fairly well updated, but depending on the specific timeframe, there can be big gaps." Kauffman Depo, Plaintiff Ex. F, p. 151:9-11.

**B.   Statutory Requirements for Warrantless Arrests**

47.     As part of the process of issuing immigration detainers, ICE's policies and

practices do not require any individualized determination that the class member is "likely to escape before a warrant can be obtained for his arrest." [Ex. E, P. Miller Dep. 59:18-60:24; Ex. F, K. Kauffman Dep. 66:2-18; Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy), DHS000112-114; Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (training materials on using the I-247X form as a detainer).]

**Defendants' Response:**

Defendants do not dispute this fact.

48.     As part of the process of issuing immigration detainers, ICE agents do not make any determination at all that the class member is "likely to escape before a warrant can be obtained for his arrest." [Ex. E, P. Miller Dep. 59:18-60:24; Ex. F, K. Kauffman Dep. 66:2-18; Ex. O, August 2, 2010 detainer policy (partially superseded); Ex. P, Dec. 21, 2012 detainer policy (superseding in part August 2, 2010 policy), DHS000112-114; Ex. K, Secure Communities detainer procedures, at DHS000048; Ex. J, at DHS002670-2673, 2679-2682 (training materials on issuing June 2015 I-247D detainers); Ex. N, at DHS002649-2650 (June 10, 2015 detainer policy); Ex. II, at DHS002788-2790, 2793-2795 (training materials on using the I-247X form as a detainer).]

**Defendants' Response:**

Defendants do not dispute this fact.

49.     Nevertheless, the legacy Immigration and Naturalization Service ["INS"] manual on arrests, searches, and seizures advised with regard to detainers that "[s]ince it is difficult to

establish that these aliens are likely to abscond before a warrant can be obtained to support an arrest without warrant under section 287(a)(2) of the Act [8 U.S.C. § 1357(a)(2)], a warrant of arrest should be issued and served upon the alien." [*See* Ex. Q, at DHS000098.]

**Defendants' Response:**

Defendants do not dispute this fact.

50.      Upon having a class member arrested on a detainer, ICE does not follow any practice or policy of having the class member brought "without unnecessary delay" before an immigration judge.  [8 U.S.C. § 1357(a)(2); Ex. E, P. Miller Dep. 71:4-7; Ex. F, K. Kauffman Dep. 114:13-22; Ex. L, J. Antia Dep. 166:17-167:4; Ex. M, C. Schilling Dep. 141:3-24.]

**Defendants' Response:**

Defendants dispute this fact. Aliens must be issued NTAs within 48 hours of arrest by ICE.  *See* 8 C.F.R. 287.3(d) (a determination will be made within 48 hours of arrest as to whether alien will remain in custody or released and whether a notice to appear and warrant of arrest will be issued.).

51.      Upon having a class member arrested on a detainer, ICE does not follow any practice or policy of bringing the class member before an immigration judge within 48 hours after the arrest.  [8 U.S.C. § 1357(a)(2); Ex. E, P. Miller Dep. 71:4-7; Ex. F, K. Kauffman Dep. 114:13-22; Ex. L, J. Antia Dep. 166:17-167:4; Ex. M, C. Schilling Dep. 141:3-24.]

**Defendants' Response:**

Defendants do not dispute this fact.

52.       Rather, ICE requests that the LEA arrest and detain the class member for up to a full 48 hours beyond when he should have been released so that ICE can assume custody of the individual, without any contemplation of promptly bringing the class member before an

immigration judge. [*See* Memo. Op. & Order on Class Certification, Dkt. # 146, at 3; Ex. D, at DHS 0002702; Ex. N, at DHS002650; Ex. HH.]

**Defendants' Response:**

Defendants dispute this.  The assertion regarding "without any contemplation of promptly bringing the class member before an immigration judge" is wrong.  8 C.F.R. 287.3(d) requires service of NTA within 48 hours of arrest.  Scheduling of hearings before IJ is controlled by EOIR which is not a defendant in this lawsuit.  There is no legal authority for IJs to hold probable cause hearings.

**C. ICE's Policies & Practices Regarding Service and Opportunity to Challenge**

53.     ICE's policies and practices regarding service of a detainer on a class member and an opportunity to challenge the detainer have evolved somewhat over the course of this class action but have not materially changed.

**Defendants' Response:**

Defendants dispute this.  Current DHS policy requires that detainers be served on subject in order to be effective.  *See* PEP Fact Sheet, DHS 2565 ("Detainer form requires that LEA provide a copy to the individual subject to the detainer in order for the request to be effective."), Form I-247D, Plaintiff Ex. D, DHS 2702, and Form I-247X, Plaintiff Ex. HH, DHS 2834.

54.     ICE agents typically do not serve a copy of a detainer on a class member, instead usually faxing or delivering it to the LEA where the class member is in custody. [Ex. F, K. Kauffman Dep. 86:15-18, 170:16-171:17; Ex. M, C. Schilling Dep. 48:14-19; Ex. AA, at DHS000232; Ex. BB.]

**Defendants' Response:**

Defendants do not dispute this.

55.     Under the August 2010 detainer form, there was no requirement or provision contemplating that the detainee would receive a copy of the detainer and no mechanism to challenge the detainer.  [*See* Ex. G.]

**Defendants' Response:**

Defendants dispute that there was no mechanism to challenge detainer.  *See* 2011 Form I-247, Plaintiff Ex. H, DHS 116-118, 2012 Form I-247, Plaintiff Ex. I, DHS 119-121, Form I-247D, Plaintiff Ex. D, DHS 2702, I-247X, Plaintiff Ex. HH, DHS 2834.  Individuals can directly contact ICE to dispute detainer, or file a lawsuit.  *See* examples of cases where ICE detainers were challenged, *Vargas v. Swan*, 854 F.2d 1028 (7th Cir. 1988) and *Makowski v. United States*, 27 F.Supp.3d 901, 908 (N.D. Ill. 2014) ("With the assistance of an attorney, Makowski's father had the detainer canceled on January 25, 2011").

56.     Under the December 2011 and December 2012 detainer forms, ICE requested but did not require that LEAs provide individuals with a copy of their detainers [Exs. H & I] or track whether this occurred. [Ex. C, at RFAs No. 4-6; Ex. E, P. Miller Dep. 129:16-130:22, 137:4-16; Ex. F, K. Kauffman Dep. 111:4-114:12.]

**Defendants' Response:**

Defendants do not dispute this.  ICE has no legal authority to require LEAs to provide individuals with a copy of their detainers.

57.     Under the June 2015 I-247D and August 2015 I-247X detainers, ICE still requests but does not require that LEAs serve class members with copies of their detainers, and the request does not expressly include the addendum "Notice to Detainee" on page 2 and 3.  [Ex. D; Ex. HH.]  ICE advises LEAs that its request to detain "only takes effect if you serve a copy of this form on the subject." [Ex. D; Ex. HH.]

**Defendants' Response:**

Defendants do not dispute the first part of sentence, because ICE has no legal authority to require LEAs to serve detainers under the 10th Amendment, but dispute last part of sentence. Forms I-247D and I-247X are both 3 pages long and the first page states "Page 1 of 3." *See* Form I-247D, Plaintiff Ex. D, DHS 2702, and Form I-247X, Plaintiff Ex. HH, DHS 2834. Defendants do not dispute the second sentence.

58.     ICE has no written policy for tracking service of detainers or the consequences if an LEA detains a class member on a detainer without serving the class member with a copy. [*See generally* Exs. N, J, CC, and II.]

**Defendants' Response:**

Defendants do not dispute that ICE has no written policy for tracking service of detainers, but dispute that there are no consequences since Forms I-247D and I-247X state the detainer only takes effect if served on the subject. *See* Form I-247D, Plaintiff Ex. D, DHS 2702, and Form I-247X, Plaintiff Ex. HH, DHS 2834.

59.     Under the December 2011, December 2012, June 2015 I-247D, and August I-247X detainer forms, ICE developed a "Notice to Detainee" addendum to the detainer form, which includes (after a lengthy advisal) a telephone number by which individuals who claim to be U.S. citizens could "advise" DHS. [hereinafter "USC telephone number"]. [Exs. H, I, D, and HH.] In practice, the "Notice to Detainee" (on pages 2 & 3 of the sample December 2011, December 2012, June 2015 I-247D and August I-247X detainers) is reduced down to one page when a detainer is issued. [Ex. F, K. Kauffman Dep. 112:4-20.]

**Defendants' Response:**

Defendants do not dispute this.

60.     Although the form purports to offer a telephone number for U.S. citizens, it does not describe any telephone number available to individuals who might have other claims against a detainer, such as named Plaintiff Maria Jose Lopez, who is a nonremovable LPR. [*See* Exs. H, I, D, and HH; Ex. E, P. Miller Dep. 137:17-138:4.]

**Defendants' Response:**

Defendants dispute this.  The forms provide a telephone number for complaints regarding any detainer.  *See* 2011 Form I-247, Plaintiff Ex. H, DHS 117, 2012 Form I-247, Plaintiff Ex. I, DHS 120, Form I-247D, Plaintiff Ex. D, DHS 2703 ("if you have a question or complaint regarding this detainer, please contact the ICE ERO Detention Reporting and Information Line at (888) 351-4024."), and Form I-247X, Plaintiff Ex. HH, DHS 2835 (same).

61.     There is no ICE policy that requires the subjects of detainers to be informed of the telephone number for U.S. citizens. [Ex. E, P. Miller Dep. 141:10-13.]  In order to contact the U.S citizen telephone number, the subject must either have access to a telephone free of charge through the LEA or have sufficient funds to make calls. [*See generally* Ex. DD.]

**Defendants' Response:**

Defendants dispute.  DHS requires that the detainer be served in order to be effective. *See* PEP Fact Sheet, DHS 2565 ("Detainer form requires that LEA provide a copy to the individual subject to the detainer in order for the request to be effective."), Form I-247D, Plaintiff Ex. D, DHS 2702, and Form I-247X, Plaintiff Ex. HH, DHS 2834.  The ICE Law Enforcement Support Center number, which is listed on the detainer forms, is toll free.  The subject can also contact their criminal defense attorney, family member, or others to contact ICE on their behalf.  *See Makowski v. United States*, 27 F.Supp.3d 901, 908 (N.D. Ill. 2014) ("With the assistance of an attorney, Makowski's father had the detainer canceled on January 25,

2011").

62.     Through the telephone number, individuals speak with DHS contractors, not with

any DHS official with authority to cancel a detainer or with training in immigration and

citizenship law. [Ex. E, P. Miller Dep. 136:10-24, 142:24-143:18; *see generally* Ex. DD.]

**Defendants' Response:**

Defendants dispute.  Miller testified that there are ICE officers available who have

authority to cancel detainers.  *See also* LESC SOP, Plaintiff Ex. DD, DHS 133 ("Instructions to

IEA/Officer: Upon learning the subject believes that they may be a U.S. Citizen, complete all

necessary systems checks to determine the claim's viability.  If the claim is substantiated,

immediately contact the detention or state/local facility where the caller is being held, lift the

detainer and notify the field office of the action.").

63.     After the DHS contractor conducts a short interview of the caller, DHS's written

policy instructs the contractor: "If the caller responds positively to any of the questions or, based

on the information the caller provides, **you believe they have a viable claim** to U.S. Citizenship,

immediately refer the call to an [ICE Agent] to validate the claim." [Ex. DD, at DHS000133

(emphasis added).]

**Defendants' Response:**

Defendants do not dispute this.

64.     DHS policy does not instruct the ICE agent to interview the caller, request the

individual or his parents' Alien files, or conduct any other further interviews or investigations

into vital records. [Ex. DD, at DHS000133.] Instead, DHS instructs the ICE agent to repeat the

same database checks that supposedly occurred prior to issuing the detainer. [*Id.*]  If the database

records are inconclusive, the ICE agent is simply to transfer the claim of citizenship to the Field

Office that issued the detainer. [*Id.*]

**Defendants' Response:**

Defendants dispute this.  *See* Investigating the Potential U.S. citizenship of Individuals Encountered by ICE, Plaintiff Ex. S, DHS 2754-57 (detailing factual examination and review process for persons making claims of U.S. citizenship to ICE).

65.     DHS has no policy of notifying individuals of the results of its inquiries into their claims of U.S. citizenship. [Ex. E, P. Miller Dep. 158:2-14.]

**Defendants' Response:**

Defendants do not dispute this.

66.     DHS never involves an immigration judge or other detached and neutral judicial officers in any detainer challenge placed through the telephone number. [*See generally* Ex. DD.]

**Defendants' Response:**

Defendants do not dispute this.

**IV.     Named Plaintiffs and Their Detainers**

67.     Although he was born in Mexico, Plaintiff Moreno acquired U.S. citizenship at birth from his U.S. citizen father. [*See* Exs. A & GG.]

**Defendants' Response:**

Defendants do not dispute this.

68.     Plaintiff Moreno always believed that he was a U.S. citizen but did not know how to prove it to government officials. [Ex. EE, J. Moreno Dep. 12:16-14:3, 40:19-41:10, 42:2-44:22, 48:13-49:16, 80:15-81:24.]

**Defendants' Response:**

Defendants dispute this.  *See* ICE Response to Interrogatory 10, *see also* Schilling Depo,

Plaintiff Ex. M, p. 80:14-19 ("during your investigation Mr. Moreno stated he was a Mexican citizen born in Durango, Mexico, and admitted to illegally entering the United States across the Arizona border in 2000, correct? A. Correct.") and 81:4-11, I-213 created by Schilling during Moreno interview, DHS 229. Moreno also admitted he had a Mexican passport (Moreno Depo, Plaintiff Ex. EE, p. 10:11-23) and he illegally entered the United States by walking across the border instead of entering through a port of entry (Moreno Depo, Plaintiff Ex. EE, p. 4:4-7). *See* 19 U.S.C. 1459 (requiring all individuals to enter the United States through ports of entry).

69.　　Prior to his arrest, Plaintiff Moreno had hired an immigration attorney and gathered substantial evidence of his U.S. citizenship. [*See* Ex. EE, J. Moreno Dep. 40:19-41:10, 42:2-44:22 48:13-49:16, 52:5-20.]

**Defendants' Response:**

Dispute as to "substantial evidence." In Moreno's response to Interrogatory No. 15, it states "Plaintiff Moreno hired Hinshaw & Culbertson LLP in or about May 2009 to investigate his claim to U.S. citizenship. Prior to Plaintiff Moreno's arrest, Plaintiff Moreno obtained evidence of his U.S. citizenship, but was still awaiting a Freedom of Information Act (FOIA) request from the Social Security Administration to complete the evidence of his citizenship."

70.　　On March 22, 2011, the morning after his arrest by the LEA, ICE faxed an immigration detainer to the Winnebago County Sheriff requesting that the LEA arrest Plaintiff Moreno pursuant to the detainer once the LEA's detention authority expired. [Ex. AA.]

**Defendants' Response:**

Dispute as to whether the detainer requested that the LEA "arrest" the Plaintiff. Actual language on the detainer requested that the LEA "maintain custody." See Plaintiff Ex. AA.

71.　　The detainer against Plaintiff Moreno was issued pursuant to ICE's standard

detainer policies and practices. [*See supra* ¶¶ 14-66; Ex. M, C. Schilling 139:24- 141:23; 151:3-152:21; Ex. AA.]

**Defendants' Response:**

Defendants do not dispute this.

72.     Within days of Plaintiff Moreno's filing the present lawsuit, ICE cancelled his detainer due to the substantial evidence of his U.S. citizenship. [*See* Ex. JJ; Ex. F, K. Kauffman Dep. 188:1-14.]

**Defendants' Response:**

Defendants do not dispute this.

73.     Plaintiff Moreno has subsequently obtained a certificate of U.S. citizenship that demonstrated that he was a citizen from the date of his birth on September 15, 1976. [Ex. A.]

**Defendants' Response:**

Defendants do not dispute this.

74.     Plaintiff Lopez entered the United States as a Lawful Permanent Resident on August 5, 1997, at the age of 15 years old. [*See* Ex. KK.]

**Defendants' Response:**

Defendants do not dispute this.

75.     Plaintiff Lopez is the mother and primary caregiver to three U.S. citizen children. [Ex. FF, M. Lopez Dep. 29:4-16, 55:14-56:7.]

**Defendants' Response:**

Although irrelevant, Defendants do not dispute this.

76.     On November 10, 2010, Plaintiff Lopez pled guilty to one count of "misprision of felony," which Plaintiff Lopez explained at her deposition means "giv[ing] false information to

law enforcement." [Ex. LL; Ex. FF, M. Lopez Dep. 20:15-21:9; 18 U.S.C. § 4.]

**Defendants' Response:**

Defendants do not dispute this. Defendants note the underlying case involved narcotics.

77. At no time was Plaintiff Lopez removable from the United States based on her conviction for "misprision of felony" or any other reason. [*See* Defs.' Answer to Am. Compl., Dkt. # 82, ¶14; Ex. C, at Request No. 9; Defs.' Mem. in Opp. to Class Certification, Dkt. # 109, at 3.]

**Defendants' Response:**

Defendants do not dispute this.

78. On February 1, 2011, ICE issued an immigration detainer against Plaintiff Lopez, requesting that the LEA arrest Plaintiff Lopez pursuant to the detainer once the LEA's detention authority expired. [Defs.' Answer to Am. Compl., Dkt. # 82, ¶14; Ex. BB.]

**Defendants' Response:**

Dispute as to the term "arrest" since detainer requested BOP to "maintain custody" of Plaintiff Lopez. *See* Plaintiff Ex. BB.

79. The detainer against Plaintiff Lopez was issued pursuant to ICE's standard detainer policies and practices. [*See supra* ¶¶ 14-66; Ex. L, J. Antia 164:7-167:4, 169:20-170:12, 201:9- 202:21; Ex. BB; Ex. LL.]

**Defendants' Response:**

Defendants do not dipute this.

80. In issuing the detainer, ICE agent Antia mistakenly believed that "misprision of felony" was a drug offense. [Ex. L, J. Antia 201:9- 202:21.] On August 12, 2011, the day after Plaintiff Lopez filed the present lawsuit, ICE cancelled her detainer. [Ex. MM.]

**<u>Defendants' Response:</u>**

Defendants do not dispute this.

Date: February 9, 2016                    Respectfully submitted,

                                          BENJAMIN MIZER
                                          Civil Division

                                          WILLIAM C. PEACHEY
                                          Director, Office of Immigration Litigation
                                          District Court Section

                                          <u>/s/  Colin A. Kisor</u>
                                          COLIN A. KISOR
                                          Deputy Director
                                          United States Department of Justice
                                          Civil Division
                                          Office of Immigration Litigation
                                          District Court Section
                                          Post Office Box 868
                                          Ben Franklin Station
                                          Washington, DC  20044
                                          Tel:  (202) 532-4331
                                          Colin.kisor@usdoj.gov

                                          WILLIAM C. SILVIS
                                          Assistant Director

                                          KATHERINE E.M. GOETTEL
                                          Senior Litigation Counsel

                                          Attorneys for Defendants