IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE JIMENEZ MORENO and MARIA JOSE LOPEZ, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>    v.<br><br>JANET NAPOLITANO, Secretary of the Department of Homeland Security (DHS); JOHN MORTON, Director of U.S. Immigration and Customs Enforcement (ICE); DAVID C. PALMATIER, Unit Chief, Law Enforcement Support Center (LESC); RICARDO WONG, Chicago Field Office Director, in their official capacities,<br><br>        Defendants. | Case No. 11 C 5452<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Congress has given the Immigration and Customs Enforcement Division (ICE) of the United States Department of Homeland Security (DHS) the authority to arrest and detain any individual whom ICE has probable cause to believe is a removable alien. As a purported exercise of this authority, ICE issues "immigration detainers" to local law enforcement agencies (LEAs). An immigration detainer is a request that the agency hold an inmate, whom ICE suspects of being a removable alien, for up to forty-eight hours after the inmate otherwise would be released, in order to give ICE the opportunity to take the alien into custody. Plaintiffs—a class of individuals who have been targeted by ICE detainers—challenge ICE's authority to issue these detainers on multiple constitutional and statutory grounds.

Currently before the Court are Defendants' motion to decertify the class and Plaintiffs' motion for summary judgment. As explained below, the Court concludes that the certified class

continues to satisfy the requirements of Federal Rule of Civil Procedure 23 for the purposes of Plaintiffs' statutory claim that the detainer program, as it currently operates, exceeds the statutory authority Congress has granted to DHS by seeking to detain individuals without a warrant and without a determination by ICE that the individuals are "likely to escape" within the meaning of 8 U.S.C. § 1357(a)(2). The Court also concludes that Plaintiffs are entitled to summary judgment as to this claim. As a result, the Court denies Defendants' motion to decertify the class and grants Plaintiffs' motion for summary judgment.

### I. Factual & Procedural Background

In 2011, Plaintiff Jose Jimenez Moreno, an American citizen, was in the custody of the Sheriff of Winnebago County, Illinois, when ICE issued an immigration detainer against him. The same year, Plaintiff Maria Jose Lopez, a lawful permanent resident, was serving a sentence at a federal correctional center in Tallahassee, Florida, when she also became the subject of an ICE immigration detainer. These detainers requested that the respective recipients hold Moreno and Lopez for up to forty-eight hours after they would otherwise be released in order to give ICE the opportunity to take custody of them.

Neither Moreno nor Lopez was in fact a removable alien. While still incarcerated for the non-immigration offenses, they filed this lawsuit on behalf of themselves and other similarly situated individuals, claiming that ICE's issuance of detainers violated the Fourth, Fifth, and Tenth Amendments to the United States Constitution and exceeded ICE's statutory authority.

When Moreno and Lopez filed suit, the immigration detainers issued against them were still in place, though the detainers had not yet extended their incarceration. Soon after they filed, however, ICE rescinded their detainers and moved to dismiss their complaint for lack of

jurisdiction, arguing that Moreno and Lopez lacked standing and, alternatively, that their claims had been mooted by the rescission of their detainers.

On the question of standing, the Court explained that standing is assessed only with regard to the date the complaint was filed. *Moreno v. Napolitano*, No. 11 C 5452, 2012 WL 5995820, at *4–5 (N.D. Ill. Nov. 30, 2012). Moreno and Lopez, the Court concluded, had standing when they filed their complaint because they faced imminent detention pursuant to the detainers issued against them. *Id.* On the question of mootness, the Court explained that, although the detainers targeting Moreno and Lopez had been rescinded, the "inherently transitory" exception to mootness applied. *Id.* at *6–7. Defendants' motion to dismiss therefore was denied.

In another opinion, the Court denied Plaintiffs' motion for partial judgment on the pleadings, explaining that the factual record would need to be developed before Plaintiffs' claims could be decided. *Moreno v. Napolitano*, No. 11 C 5452, 2014 WL 4814776, at *1, *4 (N.D. Ill. Sept. 29, 2014). In the same opinion, the Court granted in part Defendants' cross-motion for partial judgment on the pleadings, dismissing Plaintiffs' Tenth Amendment claim. *Id.* at *1, *5. The Tenth Amendment claim had been premised on the idea that ICE unconstitutionally commandeered state officials by requiring them to detain suspected removable aliens, but Plaintiffs had since conceded that the immigration detainers were mere requests to local law enforcement rather than orders. *Id.* at *5.

In the most recent opinion in this case, the Court granted Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(1) and (b)(2). *Moreno v. Napolitano*, No. 11 C 5452, 2014 WL 4911938, at *1 (N.D. Ill. Sept. 30, 2014). One of Defendants' arguments in opposition to certification was that the "commonality" and "typicality"

requirements of Rule 23(a) could not be met because ICE's immigration detainer forms had changed since the original detainers targeting Moreno and Lopez had been issued. *Id.* at *8. The form used against Moreno and Lopez had stated only that an "investigation has been initiated" into their immigration status, resulting in the issuance of the detainer, while the new form stated that ICE "has reason to believe" that the target of the detainer is subject to removal. *Id.* at *9. But the Court rejected this argument because ICE witnesses testified that the actual process for issuing detainers had not changed. *Id.*

Another of Defendants' arguments in opposition to class certification was that the "adequacy" requirement of Rule 23(a)(4) was not satisfied because ICE had rescinded Moreno's and Lopez's detainers, meaning that their stake in the case was small compared to the interests of other class members. But the Court rejected this argument as well, explaining that the existence of a live controversy on the day Moreno and Lopez filed suit was enough to make them adequate class representatives. *Id.* at *10–11.

The Court then provided this definition of the certified class:

> All current and future persons against whom Immigration and Customs Enforcement (ICE) has issued an immigration detainer of the Chicago Area of Responsibility where: (1) ICE has instructed the law enforcement agency (LEA) to continue to detain the individual after the LEA's authority has expired; (2) where ICE has not served a Notice to Appear or other charging documents, has not served a warrant of arrest for removal proceedings, and/or has not obtained an order of deportation or removal with respect to the individual; and (3) where the LEA cooperates with ICE in complying with detainers.

*Id.* at *12.

Since this class was certified, ICE has again created new immigration detainer forms. One of the new forms, DHS Form I-247D, is used to request detention of a subject for up to forty-eight hours, when the subject is considered to be a priority for removal because he or she is

suspected of terrorism, has a prior felony conviction, or has three prior misdemeanor convictions. *See* Defs.' Ex. B, DHS Form I-247D. Another form, DHS Form I-245X, is used to request a detention of up to forty-eight hours, when the subject is a removal priority for some other reason, such as having committed a significant abuse of a visa program. *See* Defs.' Ex. C, DHS Form I-245X. A third, DHS Form I-247N, is used simply to request advance notification of the subject's release date. *See* Defs.' Ex. A, DHS Form I-247N.

Both of the new forms that request detention state that the issuing immigration officer has developed probable cause to believe that the targeted individual is a removable alien. Both forms also include check boxes for the issuing officer to indicate the basis for the probable cause determination. The choices are (1) the existence of a final order of removal, (2) the pendency of ongoing removal proceedings, (3) biometric confirmation that the subject is a person known to be removable, (4) statements made by the subject that indicate removability, and (5) "other reliable evidence" of removability. Defs.' Ex. B, DHS Form I-247D; Defs.' Ex. C, DHS Form I-245X. Additionally, the current forms state that they are not effective unless and until they are served on the subject, whereas the earlier version merely asked that the form be served on the subject. And the current forms request that the subject be detained up to forty-eight hours including weekends and holidays, whereas the previous versions excluded weekends and holidays from the detention calculation.

## II. Analysis

### A. Motion To Decertify Class

Defendants have moved to decertify Plaintiffs' class, arguing that the "commonality" requirement of Rule 23(a)(2) is no longer satisfied. Defs.' Mem. Supp. Decert. at 9–11. "Commonality requires the plaintiff to demonstrate that the class members have suffered the

same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The plaintiffs' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution." *Id.* at 351. In other words, the claims must present common questions that will generate common answers. *Id.*

According to Defendants, because the current detainer forms require the issuing immigration officer to have probable cause to believe the subject is a removable alien, the class members targeted by these forms have not suffered the same alleged Fourth Amendment violation suffered by other class members, who were subjects of earlier versions. Additionally, Defendants point out that Plaintiffs' due process claims also are based on the earlier forms, which were materially different from the current versions because they excluded weekends and holidays from the calculation of the detention period and did not specify that the detainer would be effective only upon service to the suspected alien. In sum, Defendants argue that, because of the new forms, "the class is comprised of individuals that were, are, or will be subject to two very different standards." Defs.' Mem. Supp. Decert. at 10. Defendants' challenges to the typicality and adequacy requirements of Rule 23(a) are based on substantially identical grounds. *Id.* at 11–13.

Plaintiffs respond that their claims continue to present common questions that will generate common answers. They deny that the addition of the words "probable cause" to the new detainer forms have changed anything about ICE's process for issuing detainers, and they deny that the due process claims in this case are affected by the changes Defendants cite. Additionally, they contend their claims that ICE's actions exceed its statutory authority are not impacted in any way by the changes to the detainer forms.

The Court concludes that the class should not be decertified, at least with respect to one of Plaintiffs' statutory claims. Even if ICE has changed its practices in a way that destroys commonality, typicality, or adequacy as to Plaintiffs' constitutional claims, Defendants do not argue that the changes they invoke warrant decertification as to Plaintiffs' claim that ICE's practice of issuing detainers without obtaining a warrant exceeds its statutory authority under 8 U.S.C. § 1357(a)(2). Nor can they.

As discussed more fully below, under 8 U.S.C. § 1357(a)(2), ICE may detain an alien without a warrant, but only if ICE has "reason to believe" that the alien "is likely to escape before a warrant can be obtained for his arrest." Plaintiffs' claim that ICE's detainer program violates this provision raises a number of central and determinative factual and legal issues that are common to the class, including: whether it is ICE's practice to obtain (or try to obtain) warrants before issuing detainers; whether it is ICE's practice to make a determination that an alien "is likely to escape" before issuing a detainer; and, if the answers to the previous questions are negative, whether it is a violation of § 1357(a)(2) for ICE to issue detainers to LEAs without first doing so. The reasons Defendants offer for decertification—that ICE makes an individualized probable cause determination that a target is a removable alien before it issues a detainer and that varying versions of detainer forms were used during different time periods—are not relevant to this claim. Accordingly, the Court finds that the Plaintiffs' statutory claim based upon 8 U.S.C. § 1357(a)(2) remains amenable to class treatment pursuant to Rule 23(b)(1) and 23(b)(2).

As for Defendants' request to decertify Plaintiffs' constitutional claims, as will be seen, there is no need to decide this question because this case can be resolved based upon Plaintiffs'

7

statutory claim. And the Court, adhering to the well-established principle of judicial restraint, will not reach Plaintiffs' constitutional claims.

One final note, as part of their submissions, Defendants argue that the class should be decertified because, under the new forms, ICE does not "instruct" the LEA to comply with the detainer, but only requests that it do so. But Plaintiffs previously have conceded that even the older detainer forms only requested, not required, LEA compliance, and the Court recognized as much in its prior orders. *See, e.g.*, *Moreno*, 2014 WL 4911938 at *1, *5. Nevertheless, to avoid confusion, the Court hereby modifies the class definition as follows:

> All current and future persons against whom Immigration and Customs Enforcement (ICE) has issued an immigration detainer of the Chicago Area of Responsibility where: (1) ICE has requested the law enforcement agency (LEA) to continue to detain the individual after the LEA's authority has expired; (2) where ICE has not served a Notice to Appear or other charging documents, has not served a warrant of arrest for removal proceedings, and/or has not obtained an order of deportation or removal with respect to the individual; and (3) where the LEA cooperates with ICE in complying with detainers.

For these reasons, Defendants motion to decertify the class is denied.

**B. Motion for Summary Judgment**

Plaintiffs have moved for summary judgment with respect to all of their claims. A motion for summary judgment will be granted when the evidence, viewed in the light most favorable to the non-moving party, shows that there are no material disputes of fact and that the movant is entitled to judgment as a matter of law. *Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015).

As referenced above, in addition to their constitutional claims, Plaintiffs have brought three claims under the Administrative Procedures Act, 5 U.S.C. § 706(2)(C), asserting that ICE's immigration detainer practices go beyond the agency's statutory authorization. Of their three

statutory claims, two are not amenable to summary judgment on this record.[1] But Plaintiffs are entitled to summary judgment on the third, which resolves the case in their favor.

Plaintiffs' third statutory claim is that ICE's practice of issuing immigration detainers without first obtaining an arrest warrant is prohibited by the Immigration and Nationality Act. Under 8 U.S.C. § 1226(a), "an alien may be arrested and detained" while awaiting a removal decision, but the arrest must be pursuant to "a warrant issued by the Attorney General." An exception to this warrant requirement is found in 8 U.S.C. § 1357(a)(2), but that provision allows for warrantless arrest only if ICE has "reason to believe" that the suspected removable alien "is likely to escape before a warrant can be obtained for his arrest."[2] Plaintiffs contend that ICE's procedures for issuing immigration detainers fail to comply with § 1357(a)(2) because the

---

[1] One of these claims is that ICE's detainer practices defy the statutory requirement that an immigration officer establish probable cause before arresting a suspected removable alien. But, as explained, Defendants contend that immigration officers are now required to establish probable cause before issuing a detainer, and in support they have offered a declaration from ICE's Assistant Director of Enforcement. *See* Defs.' Ex. F, Albence Decl. ¶ 7. The other claim is that ICE does not comply with the statutory requirement that it take a detained alien before an immigration officer without "unnecessary delay." But whether the delays experienced by detainees are unnecessary cannot be resolved on this record. Because genuine issues of material fact exist with respect to these claims, summary judgment is inappropriate.

[2] The provision reads in full:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant . . . to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2).

9

agency makes no determination whatsoever about the chances that any individual it targets with an immigration detainer will escape before a warrant can be obtained.

For their part, Defendants concede that being detained pursuant to an ICE immigration detainer constitutes a warrantless arrest. *See* Defs.' Summ. J. Resp. Br. at 12; *see also Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) (holding that detention pursuant to an immigration detainer is an arrest under the Fourth Amendment that must be supported by probable cause). They also admit that ICE's statutory authority to make warrantless arrests, including by issuing immigration detainers, is bestowed and limited by 8 U.S.C. § 1357(a)(2),[3] which permits ICE to dispense with a warrant only when one cannot be obtained before the subject will likely escape. *See* Defs.' Summ. J. Resp. Br. at 12, 19. Moreover, Defendants acknowledge that, "[a]s part of the process of issuing immigration detainers, ICE's policies and practices do not require any individualized determination that a class member is 'likely to escape before a warrant can be obtained for his arrest.'" *See* Pls.' SOF ¶ 47; Defs.' Resp. Pls.' SOF ¶ 47 ("Defendants do not dispute this fact."). Defendants further admit that, in fact, "ICE agents *do not make any determination at all* that the class member is 'likely to escape before a warrant can

---

[3] The Court notes that another section of the statute, 8 U.S.C. § 1357(d), actually uses the word "detainer" and places certain limitations on the issuance of detainers with respect to aliens accused of drug crimes. This provision, however, does not provide ICE with any authority to request that a local law enforcement agency detain an alien beyond when the local agency would otherwise release the person. As a group of law professors explain persuasively in an *amicus* brief, "detainer" in the statute simply means a request to a local law enforcement agency for information about an inmate's release date. *See* Brief of Law Professors as *Amici Curiae*. The professors' understanding is supported by an opinion of the Supreme Court. *See Arizona v. United States*, 132 S. Ct. 2492, 2507 (2012) ("State officials can also assist the Federal Government by responding to requests for information about when an alien will be released from their custody. *See* § 1357(d)."); *see also Galarza v. Szalczyk*, 745 F.3d 634, 641 (3d Cir. 2014) ("[I]n reviewing this statute, the Supreme Court has noted that § 1357(d) is a request for notice of a prisoner's release, not a command (or even a request) to LEAs to detain suspects on behalf of the federal government."). Additionally, materials from the Immigration and Naturalization Service, ICE's predecessor, also acknowledge this older understanding of "detainer." Pls.' Ex. Q, INS Manual at DHS000097–DHS000098. In any event, Defendants agree with Plaintiffs that an immigration detainer that seeks to extend the subject's detention must comply with the requirements of 8 U.S.C. § 1357(a)(2).

be obtained for his arrest.'" *See* Pls.' SOF ¶ 48 (emphasis added); Defs.' Resp. Pls.' SOF ¶ 48 ("Defendants do not dispute this fact.").

Despite these concessions, Defendants contend that summary judgment should not be granted to Plaintiffs. They argue that ICE need not make any determination that a particular alien is "likely to escape" before a warrant can be obtained because, as they see it, any potentially removable alien[4] who is in the custody of a local law enforcement agency is, by definition, "likely to escape before a warrant can be obtained," once he or she is released. *See* Defs.' Summ. J. Resp. Br. at 19–20. Put another way, Defendants argue that ICE has satisfied § 1357(a)(2) by determining, on a categorical basis, that all potentially removable aliens who are in the custody of a local law enforcement agency are, without exception, likely to escape before ICE can obtain a warrant. This argument suffers from several flaws.

First, it ignores the fact that, in many circumstances, ICE would have plenty of time to obtain a warrant while the subject is still in the custody of the local law enforcement agency, before he or she is released. Looking at the class representatives in this case, ICE issued the detainer for Lopez on February 1, 2011, ten months before her scheduled released date in November 2011. *See* Pls.' Ex. BB, Lopez detainer at DHS000247. ICE issued the detainer for Moreno on March 22, 2011, and he was not released from custody until August 2011 or later. *See* Defs.' Summ. J. Resp. Br. at 4. Given Defendants' insistence that ICE makes (and always has made) a probable cause determination as to a subject's removability before a detainer is issued, it is difficult to see why (and Defendants do not provide any basis for the Court to find that) it would take materially longer for ICE to obtain a warrant than to issue a detainer. Perhaps a situation could exist in which ICE would have reason to believe it has time to issue a detainer

---

[4] Of course, at the time that the detainer is issued, no formal determination has been made as to the target's removability. Defendants assert that ICE makes a probable cause determination of removability prior to issuing a detainer, and this factual assertion must be taken as true for the purposes of this motion.

11

but not to get a warrant before an alien is released from the custody of an LEA. But Defendants admit that immigration officers "do not make any determination at all" with respect to this issue.

Second, Defendants' argument appears to be premised on the notion that all potentially removable aliens are, by their very status, "likely to escape before a warrant can be obtained," or, at a minimum, all potentially removable aliens, who have been placed in custody by an LEA (whether they have been convicted of a crime or not), are "likely to escape before a warrant can be obtained" upon their release. To evaluate this contention, the term "likely to escape" needs to be defined. And based upon the plain meaning of the words, the statutory context in which the phrase appears, and the cases that have applied it, it is clear that "likely to escape" means "likely to evade detention by immigration officers." *See United States v. Cantu*, 519 F.2d 494, 497 (7th Cir. 1975) ("[T]he likelihood of escape was a serious threat. . . . [The suspected aliens] travelled a heavily-trafficked interstate highway system at high speeds and for a great distance. From one moment until the next their location was uncertain and their destination not entirely predictable."); *Westover v. Reno*, 202 F.3d 475, 479–80 (1st Cir. 2000) (no evidence that woman in her own home was "likely to escape"); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218–19 (9th Cir. 1995) (no reason to believe that aliens working in factory were likely to escape before warrant could be obtained); *United States v. Harrison*, No. 97-4178, 1999 WL 26921, at *3 (4th Cir. Jan. 25, 1999) (unpublished) (local resident was not likely to escape before agents could obtain a warrant); *Araujo v. United States*, 301 F. Supp.2d 1095, 1102 (N.D. Cal. 2004) (government did not satisfy § 1357(a)(2) because there was no evidence that plaintiff had intended to flee).

Turning to Defendants' argument with this definition in mind, it goes without saying that a potentially removable alien who is in the custody of an LEA is not likely to evade detention by

12

ICE during the period of custody. Nor can it be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE. Such a reading would render the limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 1357(a)(2) meaningless. *See Mountain High Knitting, Inc.*, 51 F.3d at 218 ("Section 1357(a)(2) requires that the arresting officer reasonably believe that the alien is in the country illegally *and* that she 'is likely to escape before a warrant can be obtained for [her] arrest.'").

In fact, the phase "reason to believe" in § 1357(a)(2) requires the equivalent of probable cause, *see Cantu*, 519 F.2d at 496, which in turn requires a particularized inquiry. *See Maryland v. Pringle*, 540 U.S. 366, 373 (2003) ("'Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.'" (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Indeed, courts typically frown upon categorical determinations, such as the one Defendants espouse here, instead requiring a more individualized determination prior to arrest or detention. *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."); *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (same); *United States v. Marrocco*, 578 F.3d 627, 633 (7th Cir. 2009) ("The suspicion necessary to justify [a search] cannot be based solely on an officer's conclusion that a suspect fits a drug-courier profile."); *United States v. Walden*, 146 F.3d 487, 490 (7th Cir. 1998) ("Reasonable suspicion of criminal activity cannot be based solely on a person's prior criminal record.").[5] This is reflected

---

[5] *See also United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) ("[S]tanding alone, a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography."); *Barham v. Ramsey*, 434 F.3d 565, 573–74 (D.C. Cir. 2006) (mass arrest of park occupants was not supported by probable cause just because certain individuals had been observed committing offenses); *United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1121 (9th Cir. 2002) ("[R]easonable suspicion may not be based on broad profiles which cast

in the cases that have addressed the "likely to escape" language in § 1357(a)(2). *See, e.g.*, *Cantu*, 519 F.2d at 497 (noting that defendants were travelling a long distance on an undetermined route); *Mountain High Knitting*, 51 F.3d at 217–18 (aliens who were detained without a warrant in a factory had not been likely to escape before a warrant could be obtained); *Araujo*, 301 F. Supp. 2d at 1101 (alien who was living with his wife and had filed an application to adjust status was not likely to escape).

So, then, Defendants are left with the theory that a potentially removable alien is likely to evade detention by immigration officers simply because he or she was in the custody of an LEA prior to release. But if that is Defendants' argument, the record contains no support for such a proposition, and Defendants have offered none. And, as noted, the statutory language and the cases require a more particularized inquiry.

Perhaps recognizing the weaknesses in their position, Defendants invoke in passing *Chevron v. National Resource Defense Council*, 467 U.S. 837 (1984). Under Chevron a court is to defer to an agency's reasonable interpretation of any vague term in a statute the agency is tasked with enforcing. Defendants assert that "the agency's interpretation of the statutes relating to the administration of immigration laws and the powers to detain illegal aliens is entitled to deference under *Chevron*." Defs.' Summ. J. Resp. Br. at 20.

A *Chevron* analysis proceeds in two steps. *Brumfield v. City of Chi.*, 735 F.3d 619, 626 (7th Cir. 2013). First, the Court asks whether the statute in question is silent or ambiguous on the question at issue. *Id.* If it is not, the analysis ends there, and the statute's unambiguous meaning is applied. If, however, the statute is silent or ambiguous, the Court must then determine whether "the agency has promulgated a reasonable interpretation of the statute." *Id.*

---

suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped.").

Curiously, Defendants do not explain how the phrase "likely to escape" may be ambiguous, nor do they point to any agency interpretation of that phrase. In any event, as discussed, the Court concludes that "likely to escape" in this context unambiguously means "likely to evade immigration officers."

Boiled down, Defendants' *Chevron* argument is merely a reiteration of its request that the Court defer to ICE's judgment that every suspected removable alien becomes likely to evade immigration authorities as soon they are released from state or local custody. In support, Defendants cite a congressional finding that "[o]ver 20 percent of nondetained criminal aliens" in removal proceedings fail to appear. Defs.' Summ. J. Resp. Br. at 20 n.9. Rather than supporting Defendants' position, however, the citation shows that nearly 80 percent of "nondetained criminal aliens" do *not* evade ICE, highlighting the need for individual determinations of flight risk under § 1357(a)(2). To the extent that Defendants would have this Court conclude that a 20 percent probability of an event is sufficient to deem it "likely" to occur (or to defer to ICE's consideration of this issue), they have not provided any support for such a strained construction.

That said, even assuming, for the sake of argument, that ICE is correct in believing that every potentially removable alien in the custody of an LEA is "likely to escape" as soon as they are released, Defendants nevertheless admit that ICE makes no determination whether it would be able to obtain a warrant before the subject is detained under ICE's detention program. *See* Pls.' SOF ¶ 48; Defs.' Resp. Pls.' SOF ¶ 48. This itself violates § 1357(a)(2).

The bottom line is that, because immigration officers make no determination whatsoever that the subject of a detainer is likely to escape upon release before a warrant can be obtained, ICE's issuance of detainers that seek to detain individuals without a warrant goes beyond its

statutory authority to make warrantless arrests under 8 U.S.C. § 1357(a)(2). In the Court's view, ICE would be wise to heed the advice on issuing detainers found in the 1993 Immigration and Naturalization manual, which is included in the record. The manual states that "[s]ince it is difficult to establish that these aliens [those detained by another agency] are likely to abscond before a warrant can be obtained to support an arrest without a warrant under section 287(a)(2) of the Act [8 U.S.C. § 1357(a)(2)], a warrant of arrest should be issued and served upon the alien." Pls.' Ex. Q, INS Manual at DHS000098. The other option is for immigration officers to make an individualized assessment of the likelihood that a suspected removable alien, who is in the custody of an LEA, will seek to evade immigration officers upon release before a warrant can be obtained.

Plaintiffs are thus entitled to summary judgment on this statutory claim, which resolves the case in their favor and nullifies the immigration detainers that have been issued against them. Because the principle of judicial restraint counsels against reaching constitutional questions unnecessarily, the Court will not address Plaintiffs' constitutional claims. *See Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 522 F.3d 746, 750 (7th Cir. 2008), *aff'd*, 558 U.S. 67 (2009) ("[I]t is a fundamental rule of judicial restraint that we ought not pass on questions of constitutionality unless such adjudication is unavoidable."); *United States v. Harden*, 758 F.3d 886, 891 (7th Cir. 2014) (declining to reach Article III question because statutory question was dispositive and citing *Nguyen v. United States*, 539 U.S. 69, 76 n.9 (2003)).

## Conclusion

For all of the reasons above, Defendants' motion to decertify Plaintiffs' class [199] is denied. Plaintiffs' motion for summary judgment [192] is granted as to their claim that ICE's

issuance of immigration detainers exceeds the authority granted by 8 U.S.C. §§ 1226(a) and 1357(a)(2) in violation of 5 U.S.C. § 706(2)(C). Because the immigration detainers issued under ICE's detention program seek to detain subjects without a warrant—even in the absence of a determination by ICE that the subjects are likely to escape before a warrant can be obtained—the Court will enter judgment for Plaintiffs declaring the immigration detainers issued against Plaintiffs void. However, the Court will stay the effect of this judgment until 5:00 pm. on October 7, 2016, to allow Defendants an opportunity to determine whether they will file a motion to stay the effect of the judgment pending appeal. If Defendants wish to file a motion to stay pending appeal, Defendants must file the motion by October 6, 2016, and notice the motion for presentation on October 7, 2016, at 2:00 p.m. A status hearing is set for October 7, 2016, at 2:00 p.m.

**SO ORDERED**  **ENTER: 9/30/16**

_____
**JOHN Z. LEE**
**United States District Judge**